CLAIROL, INCORPORATED, A DELAWARE CORPORATION, PLAINTIFF-APPELLANT, v. WILLIAM KINGSLEY, ACTING DIRECTOR OF DIVISION OF TAX APPEALS, DEFENDANT-RESPONDENT.

Argued October 26, 1970—Decided November 23, 1970.

*Mr. Roger C. Ward* argued the cause for appellant (*Messrs. Pitney, Hardin & Kipp*, attorneys; *Mr. Roger C. Ward*, of counsel).

*Mr. Stephen Skillman*, Assistant Attorney General, argued the cause for respondent (*Mr. George F. Kugler, Jr.*, Attorney General, attorney).

PER CURIAM. The judgment of the Appellate Division, 109 *N. J. Super*. 22, is affirmed for the reasons expressed in its opinion. Since this opinion refers to findings made by the Division of Tax Appeals but does not set forth those findings, they are appended as an addenda[1] to this opinion.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.

---

[1]There is no real dispute of the facts. Briefly they are: Clairol, a corporation of the State of Delaware, a wholly owned subsidiary of Bristol-Myers, a corporation of the State of Delaware, manufactures and sells hair coloring preparations and (since 1965) cosmetics in many of the United States and abroad. It does not maintain a registered office or a registered agent in New Jersey, it is not authorized to do business in New Jersey, and it has no license or franchise from New Jersey or from any governmental or municipal body in New Jersey. It does not pay property taxes or any other taxes in New Jersey.

Clairol has 12 subsidiaries. Only one of them, Clairol Technical Centers, Incorporated, is authorized to do business in New Jersey. This subsidiary pays its own separate New Jersey franchise tax, and there is no interchange of personnel and no use by Clairol of its office space. The business of Clairol Technical Centers in New Jersey is to furnish technical advice to professional beauticians on what Clairol products will do and how they should be used.

It has a nationwide sales department at New York City headed by two Vice Presidents, to whom 2 national sales managers report with 9 regional managers reporting to the national sales managers and 2, 3 or 4 district managers reporting to each regional manager. Detailmen (called salesmen interchangeably) report to the district managers.

Region 1, headquarters at New York City has responsibility for New Jersey south to Atlantic City and Region 3, headquartered in Washington, D. C. (formerly at Phila.) has responsibility for the remainder of New Jersey.

The products of Clairol are manufactured at Stamford, Connecticut and warehoused at Stamford, Conn., Glendale, Cal., Dallas, Texas and Chicago, Ill. When occasion required, some of its products have

been packaged under contract in New Jersey by Ivers-Lee and Clifton Private Brands and contract packagers in other parts of the country for delivery by common carrier to Stamford, Connecticut.

Clairol does not have retail outlets in New Jersey; it sells basically to (a) wholesalers who sell to local drugstores, (b) drug chains which sell to customers, (c) beauty jobbers who sell to local beauty salons, and (d) to a miscellany of other non retail customers, including food chains, rack jobbers who sell to small food markets, department stores and variety stores. Sales to beauty jobbers are separately organized in a so-called Salon Division, with particular responsibility for hair coloring and hair care products for professional use. The other sales activities are lumped together under the jurisdiction of the second pair of vice-presidents and national sales managers.

Clairol's advertising is not local to any state, but national in scope, 55% to 60% being televised by such companies as American Broadcasting and National Broadcasting, 30% in magazines distributed nationally and 10% or less in newspapers and by radio. Retailers are free to advertise Clairol products with partial reimbursement.

Clairol has no formal office in the state, no real estate, no office furniture, no telephone (salesmen have their own), and no bank accounts. Their detailmen carry samples, business forms and advertising media, which are company owned.

The district manager and from 5 to 14 salesmen work in New Jersey and are New Jersey residents. They work from automobiles leased by the company.

The district managers and the detailmen for New Jersey are hired to service the middlemen and keep Clairol products moving in interstate commerce from Stamford to New Jersey. They do not sell to a consumer in New Jersey who would use the product herself. Each is paid a salary, not commissions; the payroll is prepared in New York, New York state income tax is withheld and the check is mailed from New York. At Christmas each may receive a bonus which would not depend on the number of orders he submits.

The district manager's duties are: to work with each detailman assigned to him once or twice a month, to accompany him into a store and observe him, and (when the visit has been completed) to correct him or give suggestions in order to make him a better salesman; to have a set appointment for any given month to visit a key wholesale account, whereat he will take an inventory of Clairol products and assist the wholesaler in reaching a decision on how much to order, and to mail the order to Stamford, Conn.; and, should there be any claims sent into the New York office concerning the area, to investigate them.

The detailman's duties are: to pay regular visits upon retail druggists in order to review the display of Clairol products, rotate the stock of Clairol products and take inventories. If the inventory discloses a need for new stock, an order will be written up with the assistance of the detailman and will be sent by the drug-

gist to the wholesaler with whom the druggist normally trades. On occasions, for the particular convenience of the druggist, the detailman will mail the order to the druggist's normal wholesaler; this is known as a turnover or transfer order. Out of the retail sales in New Jersey 60% are to the wholesaler type of account, a wholesaler being the one Clairol sells to who sells to the local drugstore, or someone else who sells to the consumer, and 40% are to the direct-type of account who sells to such as the chain drugstore, which turns around and sells to the consumer; about 25% of the 60% to the wholesaler type account is based on turnover orders discussed above. The detailman also shows the promotion running for the month, and if approved by the druggist, it is included in his order to the wholesaler and questions about the products are answered by him if they are not technical. The detailman has no personal contact with the customers of the local outlet, and he has no responsibility for installing or assembling or repairing the product on the premises of an account because Clairol is not that type of a product.

Orders given by the wholesalers or other major contacts of the district sales manager are not accepted within New Jersey, but must first be approved by Clairol's credit manager in New York. District sales managers and detailmen have no authority to accept an order before the credit manager and orders are mailed to Post Office Box No. 30 at New York City. Neither the district managers nor the detailmen have any authority whatsoever to make any contracts. Billing and collecting are not their responsibility either; on rare occasions when an account is over due a district manager may put pressure on the customer to pay the account, presumably through regular interstate channels because Clairol has no collection agency in New Jersey and does not employ one. Bills are mailed by the Comptroller from Stamford, Connecticut with instructions to the customer to remit to a locked box at First National Bank of New York at New York City, the checks to be drawn to Clairol.

From time to time the district manager received instructions at his home and the detailman receives display material and samples which are to be kept in the automobile he uses, the Clairol policy being to train every detailman to do his paperwork in his car. The samples are to be given (not sold) to cosmeticians doing a good job with Clairol products. Each lot of samples is valued at about $125.00.

Each district manager and detailman is furnished an automobile every two years or after 50,000 miles through arrangements made at New York City by Clairol with a company in the business of leasing automobiles.

No employee of Clairol in New Jersey is required or encouraged to use his home or space in his home for business purposes and he is not reimbursed for any use he may make of his home voluntarily. Only business telephone calls on the road or from home (the business card gives the home address and home telephone number), tolls for highways and bridges, gasoline and postage are reimbursed by a draft which the district manager or detailman prepares and presents to his

bank; there is no petty cash in New Jersey. Clairol's reimbursements in New Jersey total about $150.00 a week.

At no time during the period 1959 through 1966 did Clairol make sales directly to the State of New Jersey or any governmental or public agency in New Jersey except for sales to the Federal military services for the military px's in New Jersey and other places.

Complaints about the product would not be investigated by the detailman. The retailer would usually make the complaint to the wholesaler and give him back the product and the wholesaler would get the credit.

The wholesaler would have to have Clairol's approval to return merchandise except in the case where the wholesaler agrees to take a certain number of promotions and he has the right to return merchandise after 90 days and a retailer would have to obtain approval from Clairol to make returns. Returns would be made to Stamford. Also, there is a returns procedure known as "caps and flaps" for minor returns — it permits the detailman or customer to destroy merchandise to the value of $200.00 or less if he returns to Clairol caps and flaps associated with the product to prove it was destroyed.

The Clairol sales in New Jersey for 1964 were over $3,000,000.00. The other years were also very substantial.