KUPFERMAN, MURPHY, SILVERMAN and YESAWICH, JJ., concur.

Order, Supreme Court, Bronx County, entered on February 18, 1976, unanimously reversed, on the law, and the matter remanded to Supreme Court, Bronx County, for further proceedings in accordance with the opinion of this court, without costs and without disbursements.

In the Matter of GILLETTE COMPANY, Petitioner, v STATE TAX COMMISSION et al., Respondents.

Third Department, March 31, 1977

*Dewey, Ballantine, Bushby, Palmer & Wood (Francis A. Goodhue, Jr.,* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General (Robert W. Bush* and *Ruth Kessler Toch* of counsel), for respondents.

MAHONEY, J. The respondent commission has assessed corporate franchise taxes (Tax Law, art 9-A) for the years 1969 through 1972 against the petitioner totaling $547,232 plus interest. A license fee (Tax Law, § 191) for 1972 of $900 and interest has also been assessed. The franchise tax for each year was determined by taking a flat percentage of petitioner's income allocable to New York sales (Tax Law, § 210, subd 1, par [a], cl [1]), whereas the license fee was a percentage of the value of its capital stock deemed employed in this State (Tax Law, § 181, subd 1).

Petitioner asks the franchise tax assessment be annulled since it violates the provisions of section 381 *et seq.* of title 15 of the United States Code (PL 86-272), which states in pertinent part:

"(a) No State * * * shall have power to impose * * * a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person * * * are either, or both, of the following:

"(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

"(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer * * * to fill orders resulting from such solicitation are orders described in paragraph (1).

"(b) The provisions of subsection (a) shall not apply to the imposition of a net income tax by any State * * * with respect to —

"(1) any corporation * * * incorporated under the laws of such State; or

"(2) any individual who * * * is domiciled in, or a resident of, such State."

The commission found, and urges in this court, that the activities of Gillette in New York exceeded the mere solicitation of orders since salesmen visits on so-called "indirect accounts" were "primarily to insure that goods already sold

and delivered to customers in New York are on the customer's shelves, properly displayed and in saleable condition. Such merchandising is local in nature and is not solicitation as contemplated by Public Law 86-272."

The facts are not disputed. Petitioner, the Gillette Company, is a Delaware corporation with its principal place of business in Boston, Massachusetts. It is, and was during the years in question, engaged in the manufacture and sale of personal care products throughout the United States. Since 1969, Gillette has maintained no place of business in New York and has had no telephone listing or mailing address here. All manufacturing activities are performed outside the State. No stock of goods, raw materials or supplies is maintained in the State. Apart from items of negligible value, principally salesmen's samples, petitioner owns no tangible personal property in New York. All New York sales are shipped F.O.B. via a common carrier from outside the State pursuant to orders accepted by Gillette outside the State.[1]

Petitioner sells directly in New York to three kinds of customers: wholesalers, retail chains and certain independent retailers, all known as "direct accounts". In addition to taking orders (subject to home office approval), the salesmen who service these direct accounts explain current promotional and advertising campaigns. A promotion is a special effort by Gillette, expended over a limited time, to increase sales of a particular item by lowering the price it charges its direct customers and by intensifying national advertising of the item. Such promotions are explained in order to encourage the customer to push the item and also to enable him to intelligently manage his inventory in light of the anticipated increased demand for the item. The commission concedes petitioner's activities with respect to these direct accounts were mere "solicitations", as the term is used in Public Law 86-272. The issue reduces to whether calls upon "indirect accounts" exceeded solicitation.

Indirect accounts are of two sorts: independent retailers which receive Gillette products from direct account wholesalers and chain retailers supplied by the central organization

---

1. That local salesmen are not authorized to bind Gillette but rather must forward orders out of State for final acceptance is an explicit requirement to qualify for protection of Public Law 86-272. Although the commission did not make a finding of fact on this point, the uncontradicted testimony on the record is that local salesmen have no such authority.

which itself is a direct customer of Gillette. In making an indirect account call, the salesman tells the retailer of changes in products and of new promotions in the hope the retailer will order the new or promoted item from the local direct account wholesaler. The salesman also reviews the retailer's display of Gillette products to insure they are attractively arranged and in saleable condition. It is this last activity which the respondent commission focuses on as more than solicitation, characterizing it rather as "merchandising".

The commission claims that its interpretation of Public Law 86-272 may not be upset in the courts unless arbitrary or irrational. Although the judiciary must to some extent defer to an agency's interpretation of the statute which it has the responsibility to administer (Matter of Howard v Wyman, 28 NY2d 434, 438 [interpretation by Dept. of Social Servs. of Social Services Law]; Matter of Condé Nast Pub. v State Tax Comm., 51 AD2d 17, 19 [interpretation of Tax Law]), the commission's interpretation of a Federal statute, not presumptively within its expertise, cannot relieve the courts of the obligation to resolve this pure question of law.

The meaning of the statute has not been previously considered by the courts of New York and has received the attention of the Supreme Court only in Heublein, Inc. v South Carolina Tax Comm. (409 US 275). The court was asked to annul, on the authority of Public Law 86-272, a South Carolina tax on the income of a liquor producer made through sales in South Carolina. The court found more than mere solicitation in South Carolina in that the liquor producer maintained a representative in the State to comply with a complex system of State liquor regulations. The regulations required that "[s]hipments of liquor into the State may be made only to the producer in care of its representative. Prior to the shipment, the producer must mail a copy of the invoice showing the quantity and price of the items shipped, and a copy of the bill of lading to the Alcohol Beverage Control Commission * * *. Immediately after accepting delivery, the representative must furnish the Commission a copy of the invoice showing the time and place of delivery. When received, the shipment must be stored in a licensed warehouse of the producer, or, after delivery is complete, the shipment may be transferred to a licensed wholesaler. Before the goods are shipped to a wholesaler, however, the representative must obtain the Commission's permission to make the transfer. Heublein complied

with this regulatory scheme. [Citations omitted.]" *(Heublin, Inc. v South Carolina Tax Comm., supra,* pp 277-278.) No similar activity on the part of Gillette representatives has occurred in New York.[2]

Sister-State decisions offer only a general background. The statute was held to immunize income-generating activities in *Smith Kline & French Labs. v State Tax Comm.* (241 Ore 50 [pharmaceutical sales]); *State ex rel. Ciba Pharma Prods. v State Tax Comm.* (382 SW 2d 645 [Mo] [pharmaceutical sales]); *Coors Porcelain Co. v State* (183 Col 325, cert den 419 US 874 [custom porcelain sales]). However, the *Smith Kline & French* case has been severely narrowed by subsequent Oregon cases which find certain sales-related activities exceed mere solicitation *(Cal-Roof Wholesale v State Tax Comm.,* 242 Ore 435 [giving spot credit, collecting delinquent accounts and picking up returned goods]; *Herff Jones Co. v State Tax Comm.,* 247 Ore 404 [collecting deposits and advances]; *Iron Fireman Mfg. Co. v State Tax Comm.,* 251 Ore 227 [pooling technical personnel with customer to whom taxpayer provided airplane components]; *Olympia Brewing Co. v Department of Revenue,* 266 Ore 309, cert den 415 US 976 [beer kegs maintained in State]; *Miles Labs. v Department of Revenue,* 274 Ore 395 [replacing damaged goods from stocks carried by salesmen]). No immunity was found in *United States Tobacco Co. v Commonwealth* (22 Pa Commonwealth Ct 211) and *Clairol, Inc. v Kingsley* (109 N J Super 22, affd on opn below 57 N J 199). Yet, the rationale offered by the Pennsylvania court is unconvincing (see 22 Pa Commonwealth Ct, at p 221 and the *Clairol* case is distinguishable since there the court expressly relied on Clairol's use of technicians to teach customers how to use its products. Even assuming the New Jersey court correctly found such instruction to fall outside mere solicitation, Gillette's representatives in New York have engaged in no such activities. Gillette products, consisting of items such as ball point

2. The recent decision of the Supreme Court in *Complete Auto Tr. v Brady* (430 US 274) [March 7, 1977], overruling *Spector Motor Serv. v O'Connor* (340 US 602) sustaining a Mississippi tax on the privilege of doing business in that State, is not determinative of the issue herein. *Complete Auto* is based solely on the relationship of interstate business to the Commerce Clause. Unlike here, *Complete Auto* did not deny its activities had a sufficient nexus with the State; or that the tax discriminated against interstate commerce; or that the tax was unfairly apportioned; or that it was unrelated to the services provided by the State. Its sole contention was that a tax on the "privilege" of engaging in an activity in the State may not be applied to an activity that is part of interstate commerce.

pens and shaving cream, require no use instructions by salesmen.

Absent any New York authority and any uniform judicial construction elsewhere, it is necessary to look to the legislative history of Public Law 86-272. It was passed in response to the Supreme Court's decision in *Northwestern Cement Co. v Minnesota* (358 US 450 and its denial of certiorari in *Brown-Forman Distillers Corp. v Collector of Revenue* (234 La 651, cert den 359 US 28). In *Northwestern States* the court upheld a tax by Minnesota on the Minnesota income of an Iowa cement producer which maintained a sales office and staff in Minnesota to solicit the orders of wholesalers and also to encourage users of cement to ask for Northwestern cement when ordering from local wholesalers. The Louisiana court in *Brown-Forman* upheld a similar tax on a Kentucky corporation whose Louisiana activities were limited to "the presence of 'missionary men' who call upon wholesale dealers and who, on occasion, accompany the salesmen on those wholesalers *to assist them in obtaining a suitable display of [the taxpayer's] merchandise at the business establishments of said retailers* and that said 'missionary men' neither solicit nor accept orders from the retail dealers" (p 654; emphasis supplied).

The Senate Report in support of Public Law 86-272 quoted certain broad language used by the Supreme Court in its decision in *Northwestern Cement Co.,* to wit (p 452): "We conclude that net income from the interstate operation of a foreign corporation may be subjected to state taxation provided the levy is not discriminatory and is properly apportioned to *local activities within the taxing State forming sufficient nexus to support the same."* (Emphasis supplied.) The report further stated that this language had created concern and uncertainty since "[p]ersons engaged in interstate commerce are in doubt as to the amount of local activities within a State that will be regarded as forming a sufficient 'nexus', that is, connection, with the State to support the imposition of a tax on net income from interstate operations * * *. [There is] a general apprehension in the business community that sales within a State obtained through the mere solicitation of orders within the State by an out-of-State company having no other activities within the State would subject the out-of-State company to the imposition of an income tax by the State on earnings of the company 'properly apportioned' to the State. This apprehension is apparently

strengthened by the decision of the Louisiana Supreme Court in the *Brown-Forman* case, which the U.S. Supreme Court refused to review. There the activities of the corporation within the State were apparently limited to the presence of 'missionary men' engaged in solicitation. Your committee understands that this apprehension is due in large part to the burdens of compliance an out-of-State company may be subjected to in ascertaining, with respect to every State in which such sales are made, first, the company's 'taxable income', prior to any apportionment, for purposes of the particular State's tax law and, secondly, the portion of the company's total 'taxable income' that is 'properly apportioned' to the taxing State under the apportionment formula used by that particular State." (S Rep No 658, 86th Cong, 1st Sess.)

The House Report (HR 936) on the matter indicated the same alarm over the Supreme Court actions discussed above and stated that the adverse impact would be particularly heavy on small businesses since—

"compliance with the diverse tax laws of every jurisdiction in which income is produced will require the maintenance of records for each jurisdiction and the retention of legal counsel and accountants who are familiar with the tax practice of each jurisdiction. This will mean increases in overhead charges, in some cases to an extent that will make it uneconomical for a small business to sell at all in areas where business volume is small. * * *

"Businessmen should not be forced to guess about their tax liability. Nor should they be subject to the kind of State taxation which would Balkanize the American economy."

While Congress' primary intent may have been to foster small interstate businesses, nothing in the statute limits its application to business of any particular size. Therefore, a large entity such as Gillette, if its activities do not exceed those protected by the statute, is entitled to avoid the tax. Moreover, any construction in this case of Public Law 86-272 obviously will, as precedent, affect taxation of small business.

The Tax Commission urges that Gillette, by advising its indirect accounts (retailers who order Gillette products from direct account wholesalers) on display techniques, has gone beyond the activities insulated from tax. This contention is untenable. First, it is clear that some sort of calls upon indirect accounts was expressly anticipated and condoned by the statute (US Code, tit 15, § 381, subd [a], par [2]): "the

solicitation of orders by such person [Gillette], or his representative, in such State in the name of or for the benefit of a prospective customer [direct account wholesaler] of such person [Gillette], if orders by such customer [direct account wholesalers] to such person [Gillette] to enable such customer [direct account wholesaler] to fill orders resulting from such solicitation are orders described in paragraph (1)." Next, although it is not possible to state a general rule demarcating solicitation from merchandising, certainly where, as here, the complaining taxpayer owns no real or personal property (except salesmen's samples) in the State and makes no repairs on its goods after sale, the purpose of Public Law 86-272 would be frustrated by permitting the tax. Advice to retailers on the art of displaying goods to the public can hardly be more thoroughly solicitation, i.e., in this context, an effort to induce purchase of Gillette products. Making the evanescent distinctions which would be necessary to justify the imposition of the tax upon petitioner herein would, if indulged in by the several States, tend to "balkanize the American economy", a result which it was Congress' purpose to prevent.

The petition is therefore granted to the extent it seeks to annul the franchise tax. However, the license fee, on its face calculated on the basis of capital rather than income, is not reached by the Federal statute. The fee is a flat percentage of the "par value capital stock employed within this state and six cents on each share of its capital stock without par value employed within this state" (Tax Law, § 181, subd 1). Petitioner argues that since it owns no property in the State, it cannot be subject to a tax based on capital "employed" here. This of course does not necessarily follow. Petitioner further argues that even if section 181 imposes a tax, such would be invalid under the commerce clause. Apparently because the amount of the fee ($900) is *de minimis* compared to the franchise tax, the record and the briefs fail to explain the exact method and theory by which a portion of Gillette's stock was deemed employed in New York. In these circumstances, we decline to rule on such a complex and potentially important point and remit this aspect of the case to the commission to clarify its method of allocating stock.

The determination insofar as it sustains the deficiencies of franchise tax for the tax years in question should be annulled, without costs, and the matter remitted for further proceedings not inconsistent herewith.

Koreman, P. J., Sweeney, Kane and Main, JJ., concur.

Determination insofar as it sustains the deficiencies of franchise tax for the tax years in question annulled, without costs, and matter remitted for further proceedings not inconsistent herewith.