375 N.E.2d 1146 (1978)
INDIANA DEPARTMENT OF REVENUE, Defendant-Appellant,
v.
KIMBERLY-CLARK CORPORATION, Plaintiff-Appellee.
No. 2-1076A368.
Court of Appeals of Indiana, First District.
May 23, 1978.
Rehearing Denied July 10, 1978.
*1147 Theodore L. Sendak, Atty. Gen., Anthony J. Metz III, Deputy Atty. Gen., Indianapolis, for defendant-appellant.
Kreig, DeVault, Alexander & Capehart, Robert E. Johnson, Francis S. Connelly, Indianapolis, for plaintiff-appellee.
LOWDERMILK, Judge.
This case was transferred to this office from the Second District in order to help eliminate the disparity in case-loads among the Districts.
Defendant-appellant Indiana Department of Revenue (Department of Revenue) appeals from the judgment of the Marion Circuit Court ordering the Department of Revenue to refund amounts collected from plaintiff-appellee Kimberly-Clark Corporation (Kimberly-Clark) as Indiana adjusted gross income tax for the years 1969, 1970, and 1971.

FACTS
Kimberly-Clark is a Delaware corporation with its chief executive offices located at Neenah, Wisconsin. It is engaged in the manufacture, distribution, and sale of paper and related products. During 1969, 1970, and 1971, Kimberly-Clark employed at least sixteen salesmen, some of whom lived in Indiana, to represent it in this state.
Each salesman operating in Indiana reported to a district office located outside of Indiana. He made daily calls to the Wisconsin office in order to receive instructions and messages. Kimberly-Clark paid its salesmen salaries, and some could earn bonuses by exceeding quotas. Each salesman worked from his home and had no secretary or assistant provided by Kimberly-Clark. The corporation had no listing in any Indiana telephone directory, and each salesman had a personal telephone listing without reference to his employer or his profession.
Kimberly-Clark furnished each salesman a fleet or leased automobile and provided some salesmen with portable typewriters, staple guns, case cutters, and selling cases. Kimberly-Clark also furnished each salesman with brochures or pictures of its products and samples of its new products, but the salesmen neither sold nor gave away any of the sample merchandise. Kimberly-Clark reimbursed its salesmen for automobile expenses, motel expenses, and limited entertainment expenses.
*1148 Salesmen called on two types of customers: direct customers, who received their products from Kimberly-Clark; and indirect customers, such as retail stores and hotels and beauty shops, which received the Kimberly-Clark products by purchasing them from Kimberly-Clark's direct customers.
The salesmen would discuss with direct customers ways to increase sales of the Kimberly-Clark products. Occasionally the salesmen called on indirect customers and did what is known as "missionary work," in an effort to generate sales for direct customers, which in turn would generate sales for Kimberly-Clark. The missionary work included checking inventories, checking shelf facings, and explaining products. When requested to do so, a salesman would also price products and put them on shelves. Display materials were available from the Wisconsin office, but the salesmen also carried display materials. When asked to do so, a salesman would set up a display at the retail store.
Indirect customers ordered from Kimberly-Clark's direct customers. The direct customers placed their orders with Kimberly-Clark's Wisconsin office, or the salesman would forward the order to Wisconsin. The salesman had no authority to approve or disapprove any order; only persons located outside of Indiana possessed such authority. When the office located outside of Indiana received the order, it ran a credit check and also determined the pricing, quantity, and availability of the product before notifying the direct customer of acceptance of the order.
The Wisconsin office set all product prices; salesmen had no authority to negotiate prices. The Wisconsin office arranged for all sales promotions and special price offers. The Wisconsin office hired a Chicago agency to take care of all radio, newspaper, and other media advertising in Indiana.
All payments were made to the Wisconsin office. The Wisconsin office had full responsibility for collections.
The Wisconsin office handled all claims concerning merchandise. When customers made complaints to salesmen, the salesmen only forwarded the complaints to superiors located outside of Indiana and did not attempt personally to resolve such matters.
Kimberly-Clark had no inventory in the State of Indiana. It maintained no bank accounts and no offices in the State of Indiana. It rented no buildings or real estate in the State of Indiana.
Kimberly-Clark paid Indiana adjusted gross income tax under protest for the years 1969, 1970, and 1971 in the total amount of $13,198.00 plus interest of $2,757.90. The trial court held that Kimberly-Clark was not liable for such tax because its business activities in the State of Indiana amounted to no more than solicitation of orders and such activities were protected from state taxation by the provisions of Public Law 86-272 (15 U.S.C.A. § 381). Following denial of its motion to correct errors, the Department of Revenue brings this appeal from the judgment of the trial court ordering the Department of Revenue to refund the amounts paid by Kimberly-Clark as Indiana adjusted gross income tax for the years 1969, 1970, and 1971.

ISSUE
Did Kimberly-Clark's activities in Indiana during the years 1969, 1970, and 1971 constitute more than solicitation of orders as that term is used in Public Law 86-272?

DISCUSSION AND DECISION
Kimberly-Clark maintains that its activities in Indiana during the years 1969, 1970, and 1971 were limited to the solicitation of orders and that Public Law 86-272 prevents the State of Indiana from imposing an adjusted gross income tax on the income it derived from sales in Indiana. Public Law 86-272 provides, in part, as follows:
"* * *
(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person *1149 from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:
(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and
(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1)."
In Northwestern States Portland Cement Co. v. Minnesota (1959), 358 U.S. 450, 79 S.Ct. 357, 359, 3 L.Ed.2d 421, the United States Supreme Court held that
"... net income from the interstate operations of a foreign corporation may be subjected to state taxation provided the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming sufficient nexus to support the same.
* * *"
According to the statute's legislative history, Public Law 86-272 was enacted to help define the amount of local activities within a State which will be regarded as providing a sufficient nexus to support the imposition of a tax on the net income from interstate operations.
Kimberly-Clark's salesmen had no authority to approve or disapprove orders; such action was taken outside of Indiana. All orders were filled by shipments from outside the State of Indiana. The Department of Revenue argues, however, that Kimberly-Clark's salesmen did more than solicit orders in the State of Indiana.
The Department of Revenue and Kimberly-Clark have cited a number of cases in which the courts of other states have attempted to determine the range of activities which the term "solicitation of orders" may reasonably be deemed to include and exclude. The Supreme Court of Oregon summarized its holdings on that issue in Miles Laboratories, Inc. v. Dept. of Rev. (1976), 274 Or. 395, 546 P.2d 1081, 1083:
"* * *
The term `solicitation,' as it is used in Public Law 86-272, should be given its generally accepted meaning in the light of its legislative history.... Since our decision in Smith Kline & French v. Tax Com., 241 Or. 50, 403 P.2d 375 (1965), we have held that foreign businesses can be subjected to local taxation if their business activity is not confined solely to the solicitation of orders for tangible personal property. Examples of such fatal, `non-solicitous' activity are: giving `spot credit,' accepting orders, collecting delinquent accounts and picking up returned goods within the taxing state, collecting deposits and advances on orders within the taxing state, pooling and exchanging technical personnel in a complex mutual endeavor, maintaining personal property (beer kegs) and associated local business activity for purposes not related to soliciting orders within the taxing state...
`* * * [I]n order to come within the purview of P.L. 86-272 the only business activity which plaintiff's sales representatives could engage in is the solicitation of orders.' Herff Jones Co. v. Tax Com., 247 Or. 404, 412, 430 P.2d 998, 1001 (1967). (Emphasis in original.) Furthermore, in Olympia Brewing v. Dept. of Rev., 266 Or. 309, 511 P.2d 837 (1973), cert. denied, 415 U.S. 976, 94 S.Ct. 1561, 39 L.Ed.2d 872 (1974), we adopted the reasoning of the Tax Court, which stated:
`* * * "solicitation" should be limited to those generally accepted or customary acts in the industry which lead to the placing of orders, not those which follow as a natural result of the transaction, such as collections, servicing complaints, technical assistance and *1150 training. * * *' Olympia Brewing Co. v. Dept. of Rev., 5 OTR 99, 110 (1972). * * *" (Footnotes omitted).
Kimberly-Clark contends that each activity which the Department of Revenue finds objectionable should be permitted because it constitutes the direct solicitation of orders, the indirect solicitation of orders, or "a business activity which is only incidental to the Appellee's primary activity of soliciting orders." It is this third categorization which demands a more detailed examination.
We agree with the Supreme Court of Oregon that "solicitation" must be limited to the acts which lead to the placing of an order; the term does not include those acts which follow as a natural result of the placing of an order.
The Department of Revenue considers the following activities to be particularly objectionable: (1) checking shelf facings, (2) checking customers' inventories, (3) pricing products and stocking shelves when asked to do so, (4) erecting displays when asked to do so, (5) conveying information to customers concerning out-of-stock conditions or delays in shipments, and (6) verifying destruction of damaged merchandise. We would add one item to the list: (7) coordinating delivery of merchandise for special promotions.
The first four activities may reasonably be regarded as activities leading to the placing of orders by direct and indirect customers. The remaining three activities cannot be so classified. When a salesman conveys information to customers concerning out-of-stock conditions or delays in shipments, when he verifies the destruction of damaged merchandise, and when he coordinates delivery of merchandise for special promotions, he is servicing an account by taking actions necessitated by the prior placing of a specific order.
We recognize that, because of the disposable nature of many of Kimberly-Clark's products, it engages in a circular pattern of activity in order constantly to replenish the supplies for which it promotes a demand. Satisfactorily delivering one order naturally encourages the placing of another order, but that fact cannot serve to make all activities of Kimberly-Clark's salesmen in Indiana "incidental" to the solicitation of orders.
Pursuant to Public Law 86-272, Kimberly-Clark must limit its activities in Indiana solely to the solicitation of orders if it is to be exempt from this taxation. Kimberly-Clark bore the burden of showing that its activities were confined to solicitation of orders. The evidence presented at trial is not in conflict. The evidence does not reveal the frequency with which salesmen verified the destruction of damaged merchandise,[1] conveyed shipping information to customers,[2] or coordinated the delivery of merchandise[3]; it only shows that *1151 Kimberly-Clark's salesmen did perform such duties when called upon by Kimberly-Clark or its customers to do so.
Based upon the evidence presented at trial, we are constrained to hold that Kimberly-Clark did not limit its activities in the State of Indiana to the solicitation of orders in the years 1969, 1970, and 1971. The Department of Revenue properly assessed adjusted gross income tax on income derived from sales by Kimberly-Clark to customers in the State of Indiana. The judgment of the trial court is reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.
LYBROOK, P.J., and ROBERTSON, J., concur.
NOTES
[1] "Q. Is the merchandise ever destroyed?

A. Sometimes it is if it's badly damaged.
Q. Where is that destroyed?
A. Normally destroyed at the customer.
Q. Could he just go ahead and destroy it and then send in a list for credit?
A. Yes.
Q. Is there any count ever taken or verified by a salesman?
A. They normally take a count themselves, and generally you take the word of the customer.
Q. Does the salesman ever verify the count?
A. It can be, yes. If they ever ask us to come in and verify it, yes."
[2] Also you mentioned that you may have received messages when you would call into Neenah, say a mill message that they might have an out-of-stock situation or lost shipment or that sort of thing, would Neenah, Wisconsin contact the customer, or would you, as a salesman, be expected to contact them?
A. On occasion, yes they would contact, Traffic Department would contact their Traffic Department and indicate that their shipment would be delayed or what have you.
Q. O.K. Let's say that you received that message, might you, as a salesman, contact the store and notify them of the situation?
A. Yes sir."
[3] Might you ever be called to a store to be on hand to coordinate a promotional effort? In other words, if there was supposed to be a special shipment of goods, would you ever be called to a store to help coordinate the goods, make sure of deliveries?
A. This could happen, yes."
In Kimberly-Clark's exhibit three appears its statement: "Under no circumstances would the salesman deliver these products. The salesman's only effort in this regard might be to arrive at the store to coordinate efforts to assure that delivery was made on the date the consumer wanted it."