INDIANA DEPARTMENT OF REVENUE, Appellant (Defendant Below),

v.

KIMBERLY–CLARK CORPORATION, Appellee (Plaintiff Below).

No. 381S67.

Supreme Court of Indiana.

March 6, 1981.

Theodore L. Sendak, Atty. Gen. of Ind., Anthony J. Metz, III, Deputy Atty. Gen., Indianapolis, for appellant.

Robert E. Johnson, Francis S. Connelly, Krieg, DeVault, Alexander & Capehart, Indianapolis, for appellee.

PRENTICE, Justice.

This cause is before us upon the petition of the Plaintiff (Appellee), Kimberly-Clark Corporation, to transfer the cause from the Court of Appeals, First District, that Court having reversed the trial court's judgment in the plaintiff's favor. The Court of Appeals' opinion is reported at 375 N.E.2d 1146.

Transfer is hereby granted pursuant to Ind.R.App.P. 11(B)(2)(b) in that the Court of Appeals has erroneously decided a new question of law, i. e. the interpretation to be placed upon the term "business activities" as used in Public Law 86–272 (15 U.S.C.A. § 381). Specifically, the Court of Appeals decided that by reason of the very limited activities conducted within Indiana by the plaintiff, which arguably could be said were not, in and of themselves, "solicitations," it

was not entitled to the exemption provided by the statute.

Public Law 86–272 (15 U.S.C.A. § 381), in pertinent part is as follows:

" * * *

(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1) —"

The statement of the case and the relevant facts were set forth by Judge Lowdermilk of the Court of Appeals as follows:

"Defendant-appellant Indiana Department of Revenue (Department of Revenue) appeals from the judgment of the Marion Circuit Court ordering the Department of Revenue to refund amounts collected from plaintiff-appellee Kimberly-Clark Corporation (Kimberly-Clark) as Indiana adjusted gross income tax for the years 1969, 1970, and 1971.

FACTS

"Kimberly-Clark is a Delaware corporation with its chief executive offices located at Neenah, Wisconsin. It is engaged in the manufacture, distribution,

and sale of paper and related products. During 1969, 1970, and 1971, Kimberly-Clark employed at least sixteen salesmen, some of whom lived in Indiana, to represent it in this state.

"Each salesman operating in Indiana reported to a district office located outside of Indiana. He made daily calls to the Wisconsin office in order to receive instructions and messages. Kimberly-Clark paid its salesmen salaries, and some could earn bonuses by exceeding quotas. Each salesman worked from his home and had no secretary or assistance provided by Kimberly-Clark. The corporation had no listing in any Indiana telephone directory, and each salesman had a personal telephone listing without reference to his employer or his profession.

"Kimberly-Clark furnished each salesman a fleet or leased automobile and provided some salesmen with portable typewriters, staple guns, case cutters, and selling cases. Kimberly-Clark also furnished each salesman with brochures or pictures of its products and samples of its new products, but the salesmen neither sold nor gave away any of the sample merchandise. Kimberly-Clark reimbursed its salesmen for automobile expenses, motel expenses, and limited entertainment expenses.

"Salesmen called on two types of customers: direct customers, who received their products from Kimberly-Clark; and indirect customers, such as retail stores and hotels and beauty shops, which received the Kimberly-Clark products by purchasing them from Kimberly-Clark's direct customers.

"The salesmen would discuss with direct customers ways to increase sales of the Kimberly-Clark products. Occasionally the salesmen called on indirect customers and did what is known as "missionary work," in an effort to generate sales for direct customers, which in turn would generate sales for Kimberly-Clark. The missionary work included checking inventories, checking shelf facings, and explaining products. When requested to do so, a salesman would also price prod-

ucts and put them on shelves. Display materials were available from the Wisconsin office, but the salesmen also carried display materials. When asked to do so, a salesman would set up a display at the retail store.

"Indirect customers ordered from Kimberly-Clark's direct customers. The direct customers placed their orders with Kimberly-Clark's Wisconsin office, or the salesman would forward the order to Wisconsin. The salesman had no authority to approve or disapprove any order; only persons located outside of Indiana possessed such authority. When the office located outside of Indiana received the order, it ran a credit check and also determined the pricing, quantity, and availability of the product before notifying the direct customer of acceptance of the order.

"The Wisconsin office set all product prices; salesmen had no authority to negotiate prices. The Wisconsin office arranged for all sales promotions and special price offers. The Wisconsin office hired a Chicago agency to take care of all radio, newspaper, and other media advertising in Indiana.

"All payments were made to the Wisconsin office. The Wisconsin office had full responsibility for collections.

"The Wisconsin office handled all claims concerning merchandise. When customers made complaints to salesmen, the salesmen only forwarded the complaints to superiors located outside of Indiana and did not attempt personally to resolve such matters.

"Kimberly-Clark had no inventory in the State of Indiana. It maintained no bank accounts and no offices in the State of Indiana. It rented no buildings or real estate in the State of Indiana.

"Kimberly-Clark paid Indiana adjusted gross income tax under protest for the years 1969, 1970, and 1971 in the total amount of $13,198.00 plus interest of $2,757.90. The trial court held that Kimberly-Clark was not liable for such tax because its business activities in the State

of Indiana amounted to no more than solicitation of orders and such activities were protected from state taxation by the provisions of Public Law 86–272 (15 U.S.C.A. § 381). Following denial of its motion to correct errors, the Department of Revenue brings this appeal from the judgment of the trial court ordering the Department of Revenue to refund the amounts paid by Kimberly-Clark as Indiana adjusted gross income tax for the years 1969, 1970, and 1971."

Courts of other jurisdictions have passed upon very similar questions arising under the same statute, but with opposite results.[1] Two cases, in our viewpoint, are fairly representative of those cases. *Miles Laboratories, Inc. v. Department of Revenue,* (1976) 274 Or. 395, 546 P.2d 1081 and *United States Tobacco Co. v. Commonwealth,* (1978) 478 Pa. 125, 386 A.2d 471, *cert. denied,* 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193.

The Supreme Court of Pennsylvania held in *United States Tobacco Co. v. Commonwealth, supra,* that a corporation is engaged in "solicitation" alone when its only activities within a particular state consist of informing customers of new products, assisting in the display of those products and taking orders. The court stated that such activities are "inextricably related to solicitation" and that it was the intent of Congress, in enacting Pub.Law 86–272, to exempt such activities. *Id.* at 140, 142, 386 A.2d at 478–79. In reaching its decision, the Pennsylvania court relied in part upon the decision in *Gillette Co. v. State Tax Commission,* (1977) 56 A.D.2d 475, 393 N.Y. S.2d 186, *aff'd.,* (1978) 45 N.Y.2d 846, 382 N.E.2d 764, 410 N.Y.S.2d 65. In *Gillette,* it

was held that the purpose of Public Law 86–272 would be frustrated if a tax could be imposed upon a corporation which neither owns property within a particular state, nor makes repairs within that state after sale. Under such circumstances, advising retailers on the art of displaying goods constitutes "solicitation" alone. *Id.* at 482, 393 N.Y.S.2d at 191.

On the other hand, the Supreme Court of Oregon held a corporation to be taxable when its in-state representatives arrange advertising displays and replace damaged goods after sale. *Miles Laboratories, Inc. v. Department of Revenue,* (1976) 274 Or. 395, 400, 546 P.2d 1081, 1083. The court in *Miles* enumerated the following activities as being of a "nonsolicitous" nature:

"giving 'spot credit,' accepting orders, collecting delinquent accounts and picking up returned goods within the taxing state, collecting deposits and advances on orders within the taxing state, pooling and exchanging technical personnel in a complex mutual endeavor, maintaining personal property (beer kegs) and associated local business activity for purposes not related to soliciting orders within the taxing state."

*Id.* at 400, 546 P.2d at 1083 (citations omitted).

In the case at bar, the crucial activities of the petitioner are: 1) conveying information to customers concerning inventory conditions or delays in shipments, 2) verifying destruction of damaged merchandise and 3) coordinating the delivery of merchandise for special promotions.

It can be seen that the circumstances of the Oregon case differed from those of the Pennsylvania case, and those of the case

1. *Compare, e. g., Coors Porcelain Co. v. State,* (1973) 183 Colo. 325, 517 P.2d 838, *cert. denied,* (1974) 419 U.S. 874, 95 S.Ct. 136, 42 L.Ed.2d 113; *Ciba Pharmaceutical Products, Inc. v. State Tax Commission,* (1964) Mo., 382 S.W.2d 645; *Gillette Co. v. State Tax Commission,* (1977) 56 A.D.2d 475, 393 N.Y.S.2d 186, aff'd., (1978) 45 N.Y.2d 846, 382 N.E.2d 764, 410 N.Y. S.2d 65; *Oklahoma Tax Commission v. Brown-Forman Distillers Corp.,* (1966) Okl., 420 P.2d 894; *United States Tobacco Co. v. Commonwealth,* (1978) 478 Pa. 125, 386 A.2d 471, *cert.*

*denied,* 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193, *with, e. g., Hervey v. AMF Beaird, Inc.,* (1971) 250 Ark. 147, 464 S.W.2d 557; *Jantzen, Inc. v. District of Columbia,* (1978) D.C., 395 A.2d 29; *Chattanooga Glass Co. v. Strickland,* (1979) 244 Ga. 603, 261 S.E.2d 599; *Clairol, Inc. v. Kingsley,* (1970) 109 N.J.Super. 22, 262 A.2d 213, *aff'd.,* 57 N.J. 199, 270 A.2d 702, *appeal dismissed,* (1971) 402 U.S. 902, 91 S.Ct. 1377, 28 L.Ed.2d 643; *Miles Laboratories, Inc. v. Department of Revenue,* (1976) 274 Or. 395, 546 P.2d 1081.

before us are similar to both but not the same as either. The activities of Plaintiff within Indiana appear to be more closely identified with those related in the Pennsylvania case than with the Oregon case, but we decide the case as we do upon the rationale expressed in the former and not because of a compelling similarity of facts.

We agree with the Supreme Court of Pennsylvania that it is not possible to state a general rule demarcating solicitation from merchandising. *United States Tobacco Co.*, 478 Pa. at 135, 386 A.2d at 476 (quoting *Gillette Co.*, 56 A.D.2d at 482, 393 N.Y.S.2d at 191). Rather, each case must be judged upon its own merits, with particular emphasis placed upon the totality of a corporation's activities within a state. *United States Tobacco Co.*, 478 Pa. at 136 37, 386 A.2d at 477. No one or two corporate activities performed in a casual or infrequent manner should operate to remove the exemption provided by Public Law 86‑272. Such activities are indicative of the extent of a corporation's activities within a state, but it is the entire operation which must be examined.

We also believe that Congress perceived "solicitation" as embodying "sundry activities so long as those activities [are] closely related to the eventual sale of a product." *Id.* at 139, 386 A.2d at 478. Finally, when a corporate representative performs an "act of courtesy" in order to accommodate a customer, he has not ventured beyond the realm of "solicitation." *Id.*

The aforementioned activities of the petitioner in this case may be properly categorized as "inextricably related to solicitation," or as "acts of courtesy." As such, the exemption provided by Public Law 86–272 is applicable. Accordingly, the decision and opinion of the Court of Appeals are ordered vacated and the judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.