**SCHERING–PLOUGH HEALTHCARE PRODUCTS SALES CORPORATION, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 2001.
Decided Aug. 28, 2002.

Francis Mazzola and Stephen J. Blazick, Philadelphia, for petitioner.

Kevin A. Moury, Harrisburg, for respondent.

BEFORE: DOYLE, Senior Judge,[1] LEADBETTER, Judge, and FLAHERTY, Senior Judge.

---

1. The decision in this case was reached prior to the date that President Judge Doyle assumed the status of senior judge on January 1, 2002.

OPINION BY Judge LEADBETTER.

In this appeal from an order of the Board of Finance and Revenue (Board), Taxpayer Schering–Plough Healthcare Products Sales Corp., asks us to determine, *inter alia,* whether it is exempt from the Pennsylvania corporate net income tax by virtue of P.L. 86–272, codified at 15 U.S.C. §§ 381–84 (hereinafter P.L. 86–272), for the 1993 taxable year. For the reasons that follow, we reverse the Board's order.

■ The facts of this case were stipulated by the parties and are as follows.[2] Taxpayer is a California corporation with its principal place of business located in New Jersey. Taxpayer is a wholly-owned subsidiary of Schering–Plough Healthcare Products, Inc. (Parent Corp.), a Delaware corporation with its principal office located in Tennessee. Parent Corp. is engaged in the business of developing, manufacturing, and selling over-the-counter healthcare products. Parent Corp. principally conducts these activities from its facilities located in Tennessee. Taxpayer is engaged exclusively throughout the United States in the solicitation of orders for Parent Corp.'s products, including in Pennsylvania during the taxable year in dispute, 1993. Taxpayer also conducts other activities that are considered ancillary to that solicitation activity, such as promoting products and offering advice on the retail display of the products.

Taxpayer's activities in Pennsylvania were limited solely to solicitation, which was carried out by sales representatives and independent contractors. When Taxpayer generated orders, they were sent to Parent Corp.'s Tennessee facilities for approval. Parent Corp. filled all approved orders from inventory located outside of Pennsylvania, and shipped the orders to Pennsylvania customers through common carriers. Taxpayer never took title to the products.

In 1993, Taxpayer did not maintain an office or place of business in Pennsylvania, nor did it own or lease any property in Pennsylvania.[3] Taxpayer did not have the authority to accept orders for products and it did not handle credit claims or collect accounts receivable. Taxpayer earned commissions from Parent Corp. for its solicitation activities. Specifically, Taxpayer was paid a fixed percentage of the net final sales consummated by Parent Corp.

With respect to reporting and payment of corporate taxes, Taxpayer filed State corporate income tax returns and paid corporate income tax in those states where it maintains offices. In 1993, Taxpayer filed its Pennsylvania corporate tax report, and as in prior years, reported franchise tax based upon its activities in Pennsylvania. Consistent with past practice, Taxpayer did not report any corporate net income tax liability in Pennsylvania for 1993. Taxpayer did not report any liability because it interpreted the federal exemption from State taxation contained in P.L. 86–272 as exempting its Pennsylvania activities from State taxation. P.L. 86–272 provides that:

**2.** As we stated in *Fizzano Brothers Inc. v. Commonwealth,* 165 Pa.Cmwlth. 479, 645 A.2d 431, 432 n. 7 (1994), *aff'd,* 541 Pa. 527, 664 A.2d 1308 (1995):

Appeals to this court from the [Board of Finance and Revenue] are *de novo,* with no record being certified from the Board. Pa. R.A.P. 1571(f); *Ernest Renda Contracting Company, Inc., v. Commonwealth,* 516 Pa. 325, 532 A.2d 416 (1987). The stipulation of facts submitted by the parties is binding and conclusive upon this court, but we may draw our own conclusions from those facts. *Norris v. Commonwealth,* 155 Pa.Cmwlth. 423, 428–30, 625 A.2d 179, 182 (1993).

**3.** The only exception was personal property used by sales representatives to solicit orders, such as motor vehicles.

No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

15 U.S.C. § 381.

In 1995, the Department of Finance and Revenue (Department) settled Taxpayer's corporate net income tax for 1993 as reported. Thereafter, in 1998, the Department resettled Taxpayer's corporate net income tax for 1993, determining that Taxpayer was liable for approximately $95,000. In doing so, the Department rejected Taxpayer's position that its activities were protected from Pennsylvania corporate net income tax pursuant to P.L. 86–272. Taxpayer petitioned for review from the Department's resettlement of its 1993 taxes and the Board denied Taxpayer relief. The Board concluded that Taxpayer was not entitled to the federal exemption because Taxpayer was not the seller of the tangible personal property; rather, it was merely providing marketing services to Parent Corp. for which it was paid a commission. Taxpayer then filed a petition for review with this court.

On appeal, Taxpayer raises four issues for our consideration. First, Taxpayer argues that the Department's interpretation of P.L. 86–272, that the exemption is only applicable if Taxpayer has title to the products sold, is adding a condition not contemplated by the statute. Second, Taxpayer argues that the Department's interpretation violates the Supremacy Clause of the United States Constitution because it interferes with Congress' intent in passing P.L. 86–272. Third, Taxpayer argues that the Department failed to comply with the Commonwealth Documents Law[4] by adopting a regulation requiring foreign corporations to have title to the goods they sell in order to qualify for the P.L. 86–272 exemption. Lastly, Taxpayer argues that the Department violated the Fourteenth Amendment of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution in that the Department failed to uniformly apply its interpretation of P.L. 86–272 to other similarly situated corporations. Because we dispose of the first issue raised by Taxpayer in its favor, we need not reach the remaining three issues.

We begin our analysis by noting that "Liability to taxation is the rule; exemption is the exception to the rule. A grant of exemption from taxation is never presumed. On the contrary, the presumption is against the exemption from taxation." 36 P.L.E. § 92 (1996) (footnotes omitted). Further, the Department is en-

---

4. Act of July 31, 1968, P.L. 769 (Documents Law), *as amended*, 45 P.S. §§ 1102–1602. The Documents Law requires an agency to follow certain procedures when promulgating new regulations. Taxpayer alleges that the Department failed to comply with these procedures.

titled to wide discretion when administering the laws which it is charged to enforce. *Fizzano Bros. Inc. v. Commonwealth*, 165 Pa.Cmwlth. 479, 645 A.2d 431 (1994), *aff'd*, 541 Pa. 527, 664 A.2d 1308 (1995). Nevertheless, Taxpayer argues that the clear and unambiguous language of P.L. 86–272 compels the conclusion that it is exempt from Pennsylvania's corporate net income tax.

The Department counters by arguing that Congress intended only to protect the actual owner of property who sells to an in-state customer. Therefore, because Taxpayer never took title to the goods sold it does not fall within the protection of P.L. 86–272.

The Department's view is succinctly summarized in Exhibit H in the Stipulation of Facts. The Department contends that "manufacturers' representatives do not enjoy the protection from corporate net income taxes afforded by [P.L. 86–272]. The exemption this section affords is bestowed upon the manufacturer, not the representative."[5] Our research has disclosed no appellate decisions addressing this question.[6]

█ P.L. 86–272 has its roots in an old and familiar question in our federal system of government: what level of activity or contact is sufficient to allow a state, consistent with traditional notions of fair play and substantial justice, to impose a tax upon the actor? In *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959), the Supreme Court stated:

That there is a "need for clearing up the tangled underbrush of past cases" with reference to the taxing power of the States is a concomitant to the negative approach resulting from a case-by-case resolution of "the extremely limited restrictions that the Constitution places upon the states...." *State of Wisconsin v. J.C. Penney Co.*, 1940, 311 U.S. 435, 445, 61 S.Ct. 246, 250, 85 L.Ed. 267. Commerce between the States having grown up like Topsy, the Congress meanwhile not having undertaken to regulate taxation of it, and the States having understandably persisted in their efforts to get some return for the substantial benefits they have afforded it, there is little wonder that there has been no end of cases testing out state tax levies. The resulting judicial application of constitutional principles to specific state statutes leaves much room for controversy and confusion and little in the way of precise guides to the States in the exercise of their indispensable

---

5. As the Department points out, it is not completely alone in its interpretation. At least one other state, Iowa, has codified this view. Iowa Admin. Code § 701–52.1(2)(422) states in relevant part that "P.L. 86–272 does not extend to those corporations which sell services, real estate, or intangibles in more than one state or to domestic corporations. For example, P.L. 86–272 does not extend to brokers or manufacturers' representatives or other persons or entities selling products for another person or entity."

6. The vast majority of litigation surrounding P.L. 86–272 has involved the scope of the term "solicitation." *Wisconsin Dep't of Revenue v. Wrigley*, 505 U.S. 214, 112 S.Ct. 2447, 120 L.Ed.2d 174 (1992) (noting the confusion that persisted after P.L. 86–272 was passed, the court created the "entirely ancillary" standard for solicitation and a *de minimis* exception thereto). *See, e.g., Amgen Inc. v. Comm'r of Revenue*, 427 Mass. 357, 693 N.E.2d 175 (1998); *Gillette Co. v. State Tax Comm'n*, 56 A.D.2d 475, 393 N.Y.S.2d 186 (1977); *Clairol Inc. v. Kingsley*, 109 N.J.Super. 22, 262 A.2d 213, *aff'd*, 57 N.J. 199, 270 A.2d 702 (1970); *Ciba Pharm. Prods. Inc. v. State Tax Comm'n*, 382 S.W.2d 645 (1964); *Smith, Kline, & French Labs. v. State Tax Comm'n*, 241 Or. 50, 403 P.2d 375 (1965). In the case *sub judice*, it is clear that Taxpayer's activities never moved beyond "solicitation" for P.L. 86–272 purposes. *See United States Tobacco Co. v. Commonwealth*, 478 Pa. 125, 386 A.2d 471 (1978).

power of taxation. This Court alone has handed down some three hundred full-dress opinions.... As was said in *Miller Bros. Co. v. State of Maryland,* 1954, 347 U.S. 340, 344, 74 S.Ct. 535, 538, 98 L.Ed. 744, the decisions have been "not always clear ... consistent or reconcilable. A few have been specifically overruled, while others no longer fully represent the present state of the law."

*Id.* at 457–58, 79 S.Ct. 357. In *Northwestern,* the court upheld a "Minnesota tax on the Minnesota income of an Iowa cement manufacturer who maintained a sales office and staff in Minnesota to solicit orders and encourage cement users there to order Northwestern cement when ordering from local wholesalers." *United States Tobacco Co. v. Commonwealth,* 478 Pa. 125, 131–32, 386 A.2d 471, 474 (1978). Specifically, the court held that "net income from the interstate operations of a foreign corporation may be subjected to State taxation provided the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming sufficient nexus to support the same." *Northwestern,* 358 U.S. at 452, 79 S.Ct. 357. However, far from settling the issue, the court's decision in that case and several others created, at least in Congress' view, further confusion.[7]

Persons engaged in interstate commerce are in doubt as to the amount of local activities within a state that will be regarded as forming a sufficient "nexus," that is connection, with the state to support the imposition of a tax on net income from interstate operations.... [There is a] general apprehension in the business community that sales within a state obtained through the mere solicitation of orders within the state by an out-

of-state company having no other activities within the state would subject the out-of-state company to the imposition of an income tax by the state on earnings of the company "properly apportioned" to the state.

. . . .

[U]nless some certainty is restored to this area, the economic implications for the economy of the entire nation may be unfortunate.

S. Rep No. 86–658 (1959), reprinted in 1959 U.S.C.C.A.N. 2548, 2549–50. It was against this backdrop that Congress enacted P.L. 86–272. As the court later noted in *Heublein, Inc. v. South Carolina Tax Commission,* 409 U.S. 275, 93 S.Ct. 483, 34 L.Ed.2d 472 (1972):

In [P.L. 86–272], Congress attempted to allay the apprehension of businessmen that "mere solicitation" would subject them to state taxation. Such apprehension arose because, as businessmen who sought relief from Congress viewed the situation, *Northwestern States Portland Cement* did not adequately specify what local activities were enough to create a "sufficient nexus" for the exercise of the State's power to tax. [P.L. 86–272] was designed to define clearly a lower limit for the exercise of that power. Clarity that would remove uncertainty was Congress' primary goal. By establishing such a limit, Congress did, of course, implicitly determine that the State's interest in taxing business activities below that limit was weaker than the national interest in promoting an open economy.

*Id.* at 280, 93 S.Ct. 483 (footnote omitted). Looking at the plain wording of the statute and the extensive history leading to its passage, we simply cannot agree with the Department that obtaining title to the

---

7. *See, e.g., Brown–Forman Distillers Corp. v. Collector of Revenue,* 234 La. 651, 101 So.2d 70 (1958), *cert. denied,* 359 U.S. 28, 79 S.Ct. 602, 3 L.Ed.2d 625 (1959); *Int'l Shoe Co. v. Fontenot,* 236 La. 279, 107 So.2d 640 (1958), *cert. denied,* 359 U.S. 984, 79 S.Ct. 943, 3 L.Ed.2d 933 (1959).

goods sold is necessary to qualify for P.L. 86–272's exemption. First, as detailed above, Congress' intent was to set a clearly lower limit of activity below which no business can be taxed. *Wisconsin Dep't of Revenue v. Wrigley,* 505 U.S. 214, 223, 112 S.Ct. 2447, 120 L.Ed.2d 174 (1992); *Heublein, Inc. v. South Carolina Tax Comm'n,* 409 U.S. 275, 280, 93 S.Ct. 483 (1972); *United States Tobacco,* 478 Pa. at 133, 386 A.2d at 475. Indeed, it may well be said that the statute merely clarifies a limitation on the taxing power of the states already mandated by the Constitution. In this regard, we can see no logical basis for the Department's construction of the statute. It cannot seriously be argued that a company which limits its activity in a State to solicitation of orders for goods to which it will never take title has a greater nexus to that State than a company taking similar orders for goods it owns someplace else.

Moreover, contrary to the Department's assertion, the plain language of the statute is devoid of any suggestion that ownership of the goods is significant. As stated by the California Board of Equalization[8] in *E.F. Timme & Son, Inc.,* 69–SBE–01, 1969 WL 1795 (April 7, 1969):

> It is a well established rule that where the meaning of a statute is clear and unambiguous, the statute must be enforced as written. Nowhere in Public Law 86–272 is the condition set forth, either expressly or impliedly, that the immunity is available only to sellers owning the property sold. Congress has simply determined that there is an undue burden on interstate commerce where the only connection with the tax-

ing state by the multistate foreign seller is the solicitation of orders by salesmen or independent contractors. Through legislation [Congress] has expressly granted immunity where such solicitation is the only activity and where there is no place of business in the state seeking to tax. If Congress had wished to limit the law's application to sales of property by owners it could have easily altered the language.

(Citations omitted). Although *E.F. Timme & Sons* is not binding on this court, we concur with its reasoning. As the Supreme Court of Virginia stated in rejecting an attempt by its Department of Taxation to limit the reach of P.L. 86–272: "In the absence of a qualification in the federal statute, the Department may not add conditions to, or otherwise limit, the protection offered by § 381." *Commonwealth, Dep't of Taxation v. Nat'l Private Truck Council,* 253 Va. 74, 480 S.E.2d 500, 502 (1997) (citing *Comm'r of Revenue v. Kelly–Springfield Tire Co.,* 419 Mass. 262, 643 N.E.2d 458, 461 (1994)).

For the foregoing reasons, we reverse the Board's order.

### *ORDER*

AND NOW, this 28th day of August, 2002, the order of the Pennsylvania Board of Finance and Revenue in the above captioned matter is REVERSED. Pursuant to Pa. R.A.P. 1571(i), exceptions may be filed within 30 days of this order.

---

8. The California State Board of Equalization is analogous to our own Board of Finance and Revenue.