COMMISSIONER OF REVENUE *vs.* WELLS YACHTS SOUTH,
INC.

Suffolk. January 11, 1990. - February 14, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Taxation*, Sales and use tax, Corporation. *Statute*, Construction. *Corporation*, Corporate entity, Ownership.

The Appellate Tax Board erred in allowing, on equitable grounds favoring the interests of successor shareholders, an abatement of tax penalities previously assessed for a corporation's failure to file timely returns and pay sales taxes, where as of the time the taxes and returns were due no "reasonable cause" appeared, within the meaning of G. L. c. 62C, § 33 (*f*), which would excuse the corporation's neglect. [664-665]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard M. Brunell*, Assistant Attorney General, for the Commissioner of Revenue.

*Robert J. Foley* for the taxpayer.

NOLAN, J. This is an appeal from a decision of the Appellate Tax Board (board). The Commissioner of Revenue (Commissioner) argues that the board erred when it abated a penalty imposed on the taxpayer, Wells Yachts South, Inc. (Wells Yachts). We agree with the Commissioner and reverse the board's decision.

From the facts found by the board, it appears that Wells Yachts is a Massachusetts corporation in the business of selling sailboats. From the last quarter of 1982 through the third quarter of 1984, Wells Yachts did not timely file returns and pay sales taxes, as required by G. L. c. 64H, § 2 (1988 ed.), and G. L. c. 62C, § 16 (*h*) (1988 ed.). During the fourth quarter of 1984, John F. Bertolami, together with

another individual, purchased the outstanding shares of Wells Yachts. Bertolami became the general manager. When Bertolami and his "partner" took over Wells Yachts, they were aware of the sales tax arrears. Wells Yachts immediately began to pay the back taxes when the new owners took over. Wells Yachts also paid all its current sales taxes.

It was not until after Bertolami took control of Wells Yachts that he first learned of interest and penalties assessed against Wells Yachts, in addition to the back taxes. Bertolami asked the Commissioner to abate the interest and penalties. The Commissioner declined to do so. Wells Yachts appealed to the board seeking an abatement of just the *penalties*, which amount to $36,009.25.

The board held a hearing and issued an opinion. The board determined that Wells Yachts had undergone a period of rapid growth when owned and managed by Bertolami's predecessors. During that growth period the corporation was not managed properly and suffered from ineffective business controls. As a result, the company encountered cash flow problems and could not meet its tax obligations as they became due. In fact, the previous owners had collected the sales taxes and written checks to the Commonwealth but they did not mail the checks because there was a lack of cash to cover them. The board also found as a fact that Wells Yachts's tax arrears (and hence the penalties) were the result of improper management by the previous owners of the corporation. As to the board's ultimate decision, we quote from its opinion: "Although the penalties in question were incurred by the previous owners of the corporation, they will fall on a present owner who has accepted and followed a schedule for paying back taxes, interest, and accrued penalties. Assuming that the ineffective business controls and improper management of the previous owners under conditions of rapid growth were not reasonable cause for them to fail to file returns and to pay taxes, it seems to the board that the present owners ought not to be burdened with *penalties* assessed for the faults of their predecessors. The board therefore believes that under the facts of this case, liability for the

*penalties* accrued before acquiring the business should be limited to the previous owners of the corporation and not extended to the present owners" (emphasis in original). Thus, the board concluded that there was "reasonable cause" under G. L. c. 62C, § 33 (*f*), for the failure to file returns and pay taxes. Accordingly, the board abated the penalties assessed against Wells Yachts.

This court will not alter a decision of the board unless that decision is based on an error of law or is not supported by substantial evidence. *Tenneco Inc.* v. *Commissioner of Revenue*, 401 Mass. 380, 383 (1987). Since neither party to this appeal made a timely request for a stenographic record, they are both "deemed to have waived all rights . . . as to whether a finding was warranted by the evidence." G. L. c. 58A, § 10 (1988 ed.). Accordingly, we examine the board's decision only for errors of law. See *Good* v. *Commissioner of Revenue*, 395 Mass. 686, 687 (1985).

That portion of the statutory scheme at issue here is relatively straightforward. General Laws c. 62C, § 33, in subsections (*a*) and (*b*), provides for the imposition of a penalty when a return is filed late or when a tax is paid late. The purpose of G. L. c. 62C, § 33, is manifest. The Legislature sought to ensure the prompt payment of taxes and the prompt filing of returns. Anyone who fails to file in a timely fashion is subject to a penalty. The only means of avoiding the penalty is found in subsection (*f*) of § 33 which provides: "If it is shown that any failure to file a return or to pay a tax in a timely manner is due to reasonable cause and not due to willful neglect, any penalty or addition to tax under this section may be waived by the commissioner, or if such penalty or addition to tax has been assessed, it may be abated by the commissioner, in whole or in part."

The first issue before us is whether there exists a question of law. Wells Yachts contends that the determination whether there is "reasonable cause" within the meaning of G. L. c. 62C, § 33 (*f*), is factual in nature. We agree that there must be factual findings regarding the reasons that the returns were not filed and that the taxes were not paid on the

dates they were due. See *M & T Charters, Inc.* v. *Commissioner of Revenue,* 404 Mass. 137, 144 (1989) (remanding for findings and rulings on issue of reasonable cause). The ultimate question whether there is reasonable cause within the meaning of the statute is one of law, however. It is the duty of this court to say what factors must be present to comprise reasonable cause. It is well established that "[t]he duty of statutory interpretation is for the courts." *Casey* v. *Massachusetts Elec. Co.,* 392 Mass. 876, 879 (1984), quoting *Cleary* v. *Cardullo's Inc.,* 347 Mass. 337, 344 (1964). Accord *United States* v. *Boyle,* 469 U.S. 241, 249 n.8 (1985) (under comparable Federal statute, what elements constitute reasonable cause is a question of law).

The primary factor relied on by the board in this case was that the "present owners" of the corporation were not responsible for the failure to file returns and to pay taxes. In other words, the board focused on what it perceived to be the equities involved in requiring the corporation, as owned and managed in 1988, to pay penalties for acts the board attributed to prior owners and managers. Aside from the substance of its test, the board's temporal framework was in error. In determining whether there is "reasonable cause" the fact finder must look to the *time when the returns or tax payments were due.* Whether the taxpayer's tardiness is due to reasonable cause is a test to be passed or failed as of the time that the taxpayer was obligated to act. Any other conclusion would be inconsistent with the purpose behind the penalty provisions of § 33: to ensure the payment of taxes and the filing of returns when they are due. The words of a statute must be construed in association with the general statutory plan. *Polaroid Corp.* v. *Commissioner of Revenue,* 393 Mass. 490, 497 (1984). It was error for the board to focus on the existence of reasonable cause at the time of the hearing rather than at the time that the sales taxes and returns were due. See *Industrial Indem.* v. *Snyder,* 41 Bankr. 882 (E.D. Wash. 1984) (Federal District Court reaches same conclusion under Federal statutory counterpart to G. L. c. 62C, § 33 [*f*]).

In focusing on the equities of imposing the penalty on the "present owners," the board also mischaracterized the object of the assessment. The burden of the penalty does not lie on the "present owners" but on the corporation, Wells Yachts. "The corporate form should not be ignored . . . ." *Commissioner of Revenue* v. *Globe Automatic Vending Co.*, 383 Mass. 886, 887 (1981). The question before the board was whether there was reasonable cause for the failure of Wells Yachts to pay sales taxes in a timely fashion, not whether the current shareholders were responsible for that failure.

Finally, we turn to the reason that the board cited for the failure of Wells Yachts to pay its sales taxes at the time they were due: cash flow problems due to ineffective business controls and improper management during a period of rapid growth. In providing for the abatement of penalties when a taxpayer's tardiness was due to "reasonable cause and not due to willful neglect," § 33 (*f*) sets an objective standard. At a minimum, the taxpayer must show that he exercised the degree of care that an ordinary taxpayer in his position would have exercised. The factual determination that Wells Yachts did not pay its sales taxes because of "ineffective business controls" and "improper management" indicates that the corporation did not exercise ordinary business care. As a matter of law, the failure to pay sales taxes because a taxpayer has inadequate cash due to negligent business practices is not "reasonable cause." Moreover, the finding that Wells Yachts actually collected the sales taxes and wrote checks to the Commonwealth but did not mail them indicates that the failure to file on time was due to wilful neglect.

For the foregoing reasons the decision of the Appellate Tax Board is reversed.

*So ordered.*