GERALD W. BLAKELEY, JR., & another[1] vs. COMMISSIONER
OF REVENUE.

No. 89-P-23.

Suffolk. February 8, 1990. - April 13, 1990.

Present: WARNER, C.J., BROWN, & FINE, JJ.

*Taxation*, Income tax, Abatement.

Taxpayers who sought to preserve a Federal income tax deduction by de-
laying, until the following calendar year, payment of a portion of their
State income tax due in 1984 had no "reasonable cause" recognizable
under G. L. c. 62C, § 33(*f*), warranting an abatement of the penalty
for failure to pay the full State tax when due. [501-502] BROWN , J.,
concurring.

APPEAL from a decision of the Appellate Tax Board.

*Chester M. Howe* for the taxpayers.

*Rosanna Cavallaro*, Assistant Attorney General, for the
Commissioner of Revenue.

WARNER, C.J. This is an appeal by the taxpayers from a
decision of the Appellate Tax Board (board) upholding the
refusal of the Commissioner of Revenue (commissioner) to
abate a late payment penalty on income taxes for the calen-
dar year 1983.

The case was submitted to the board on the pleadings and
a statement of agreed facts (with exhibits), from which we
draw the essential facts. In 1983, Gerald W. Blakeley, Jr.
(Blakeley), completed a cash sale of his interest in the Ritz-
Carlton hotel in Boston from which he realized a long-term
capital gain of $38,871,146. Largely on account of the gain,
for the year 1983 Blakeley had Federal income tax liability
of about $8,000,000, and State income tax liability of

---

[1]Tenley Blakeley, the wife of Gerald, is a party because she signed a
joint Massachusetts income tax return with him.

$2,102,740. Blakeley timely filed, on April 17, 1984, a Massachusetts income tax return for 1983 and reported a tax due of $2,102,740, but he then made payment of only $1,181,732. The reason for the underpayment was that the payment of the balance due in 1984 would result in a loss of the deduction of that amount on Blakeley's Federal income tax return for the calendar year 1984. If the balance was paid in 1985, it would be deductible on the Federal return for that year. The cost of the loss of the deduction was estimated at $500,000.

On November 16, 1984, the commissioner issued a notice of assessment, showing an amount due of $1,049,228.55, which was made up of the unpaid portion of the income tax plus interest and a late penalty payment of $40,500.[2] Blakeley paid the full amount owed in two installments on January 1, 1985, and April 8, 1985. At all relevant times, Blakeley had sufficient funds to pay the full tax liability.

General Laws c. 62C, § 33(b), provides for the payment of a penalty on the late payment of a tax, assessed at one-half of one percent of the unpaid tax for each month or fraction thereof with a maximum of twenty-five percent of the unpaid tax. "The purpose . . . [of the statute] is manifest. The Legislature sought to ensure *the prompt payment of taxes . . .*" (emphasis supplied). *Commissioner of Rev.* v. *Wells Yachts South, Inc.,* 406 Mass. 661, 663 (1990). "The only means of avoiding the penalty is found in subsection (f) of § 33 which provides: 'If it is shown that any failure to file a return or to pay a tax in a timely manner is due to *reasonable cause and not due to willful neglect,* any penalty or addition to tax under this section may be waived by the commissioner, or if such penalty or addition to tax has been assessed, it may be abated by the commissioner, in whole or in part' " (emphasis supplied). *Id.* at 663-664.

The parties have agreed on the facts, and so our review is limited to questions of law. See *Towle* v. *Commissioner of Rev.,* 397 Mass. 599, 601 (1986); *Commissioner of Rev.* v. *Jones, ante* 332, 333 (1990). "The ultimate question whether

---

[2]There is no challenge to the correctness of the calculation of the amount of the penalty.

there is reasonable cause within the meaning of . . . [G. L. c. 62C, § 33(*f*)] is one of law . . . ." *Commissioner of Rev.* v. *Wells Yachts South, Inc.*, *supra* at 664. "In providing for the abatement of penalties when a taxpayer's tardiness was due to 'reasonable cause and not due to wilful neglect,' . . . [the statute] sets an objective standard. At a minimum, the taxpayer must show that he exercised the degree of care that an ordinary taxpayer in his position would have exercised." *Id.* at 665. The question of reasonable cause is to be determined as of the time that the taxpayer was required by law to act— here, the date when full payment of the tax was due. *Id.* at 664. The taxpayer has the burden of establishing a right to an abatement. See *M&T Charters, Inc.* v. *Commissioner of Rev.*, 404 Mass. 137, 140 (1989).

The board concluded that the Federal tax saving which Blakeley anticipated did not constitute reasonable cause for late payment of the Massachusetts income tax. Even if the circumstances were such as to establish reasonable cause, the board reasoned, Blakeley failed to satisfy the test that the failure timely to pay was not due to wilful neglect. The board rejected Blakeley's argument that an abatement should be granted because he in good faith relied on the advice of qualified tax counsel.[3] We affirm.

Considering the purpose of G. L. c. 62C, § 33(*b*), and the standards set out in *Commissioner of Rev.* v. *Wells Yachts South, Inc.*, 406 Mass. 661 (1990), we hold as a matter of law that the prospect of Federal tax saving made possible by the late payment of Blakeley's Massachusetts income tax does not provide reasonable cause to support the grant of an abatement under G. L. c. 62C, § 33(*f*). Here, there is no question that Blakeley wilfully failed to pay income taxes acknowledged to be owed and that he had sufficient funds to make payment in full.

Blakeley's reliance, as a basis for reasonable cause, on the advice of qualified tax counsel is misplaced. Prior to the filing of the 1983 Massachusetts income tax return, counsel's re-

---

[3]It was agreed that Blakeley acted on the advice of qualified tax counsel.

quest to the Department of Revenue that Blakeley be permitted to make deferred installment payments and to be relieved of any penalty payment because of "undue hardship" was rejected. Blakeley was so advised by counsel prior to filing.[4] Indeed, he was told that a late payment penalty would be assessed. Counsel's further advice that "substantial economic hardship (which in . . . [counsel's] judgment is involved) *should* justify the deferral of payment" (emphasis supplied), is to no avail. This, of course, cannot sensibly be construed to constitute advice that a penalty tax *would* be abated. Moreover, "one does not have to be a tax expert to know that tax returns have fixed filing dates[,] . . . that taxes must be paid when they are due," *United States* v. *Boyle*, 469 U.S. 241, 251 (1985), and that there may be adverse consequences upon the failure to do so.

Blakeley was fully aware of the due date and the amount of the Massachusetts income tax due for 1983. His choice not to pay the full amount of the tax was not attributable to any inability to pay or hardship but was driven by an understandable and prudent desire to realize a substantial Federal tax saving to which he would otherwise not be entitled. The decision was made with full knowledge of the interest and, in the circumstances, the relatively insignificant penalty which would inevitably be assessed. There was no basis reasonably to expect the grant of an abatement of the penalty.[5]

*. Decision of the Appellate Tax Board affirmed.*

---

[4]Blakeley was concerned about adverse publicity should his name appear on a delinquent taxpayer list. Counsel assured him that there was little probability of that occurrence without the prior opportunity to satisfy any tax liability.

[5]If demonstration is needed, the ramifications of a contrary holding point to the fallaciousness and arbitrariness of Blakeley's position. If tax saving constitutes reasonable cause to support the avoidance of a late payment penalty, why not also any other favorable economic circumstance — the bargain purchase of a home, a business, an investment, or a myriad of other situations in which a taxpayer could plead the loss of economic opportunity. Indeed, as to tax saving, how much would be enough to establish reasonable cause?

BROWN, J. (concurring). I fully agree with the majority opinion. In my view, this appeal is utterly frivolous. Facing, as we do, "the onslaught of cases confronting our understaffed and resource-meager court system" (*Bender* v. *Automotive Specialties, Inc.*, 407 Mass. 31, 36 [1990]), we can ill afford to spend our time and the taxpayers' money on matters such as these. I repeat once again: our courts and our lawyers should be assisting the truly needy, not the greedy. Cf. *Doliner* v. *Brown*, 21 Mass. App. Ct. 692, 698 (1986) (Brown, J., concurring).