A.W. CHESTERTON COMPANY *vs.* COMMISSIONER OF REVENUE. No. 91-P-764. October 31, 1994. *Taxation*, Corporate excise, Abatement.

The appellant, A.W. Chesterton Company (Chesterton), is a Massachusetts business corporation engaged in the manufacture and sale of sealing devices for pumps and valves and other industrial products. These are sold nationally and internationally, primarily through an extensive network of independent distributors. After filing its corporate excise tax returns for the tax years 1977, 1978, and 1979, Chesterton applied to the Department of Revenue for abatements. These were denied. Chesterton appealed to the Appellate Tax Board, which allowed Chesterton modest abatements of the excise paid for those years (a total of $3,464.39) but agreed in the main with the department. Chesterton appealed the board's decision to this court.

The corporate excise is based on an apportionment formula that is a composite of three factors (sales, payroll, and property). See G. L. c. 63, § 38(*c*). The computations of the sales and payroll factors are at issue in the appeal.

*Payroll factor.* The issue here relates to Chesterton's own sales force, roughly thirty-five persons who sell to and service the independent distributors who, in turn, sell to ultimate users. The Chesterton salespeople live outside Massachusetts and do the greater part of their work outside Massachusetts, often from their homes or hotel or motel accommodations. Their compensation is includable in the base for the payroll factor (thereby upping the base for assessment of the corporate excise) if it is "[c]ompensation . . . paid in this commonwealth," G. L. c. 63, § 38(*e*). The statute treats employee compensation as having been paid in this commonwealth if some of the employee's service is performed in the Commonwealth and "the base of operations or, if there is no base of operations, the place from which the service is directed or controlled is in this commonwealth . . . ."[1] The party seeking an abatement generally has the burden

---

[1]General Laws c. 63, § 38(*e*), reads in relevant part (as appearing in St. 1973, c. 652, § 6):

"Compensation is paid in this commonwealth if:

"1. the employee's service is performed entirely within this commonwealth; or

"2. the employee's service is performed both within and without this commonwealth, but the service performed without this commonwealth is incidental to the employee's service within this commonwealth; or

of proof. *State Tax Commn.* v. *John H. Breck, Inc.*, 336 Mass. 277, 289 (1957). *General Elec. Co.* v. *Assessors of Lynn*, 393 Mass. 591, 599 (1984). *Blakeley* v. *Commissioner of Rev.*, 28 Mass. App. Ct. 499, 501 (1990). Chesterton thus bore the burden of proving one of the following: that employees in its centrally paid sales force performed all of their services outside the Commonwealth, that their base of operations was outside the Commonwealth, or, if they had no base of operations, that their services were directed and controlled from outside the Commonwealth. The board found that two employees performed all their services out of State. As to the others it found Chesterton's burden unmet. Chesterton points to nothing in the evidence that compelled the board to conclude that the other employees performed their services exclusively out of State. The proof Chesterton offered consisted primarily of lists of the employees involved, their places of residence, and their territories. These were all out of State. Nevertheless, with the possible exception of one Pakula, there was no testimony to the effect that the sales people on the lists at no time traveled to the home offices in Stoneham, perhaps for general sales or education meetings or sessions concerning new product introductions. Certainly in the absence of direct testimony to such general effect, the board was not required to infer that the employees' services were all performed out of State merely from the fact that their residences and sales territories were out of State. Walsh, the vice president in charge of sales, acknowledges in his testimony that he performed services in Massachusetts in the years in question. It is agreed that Chesterton's own sales people had no bases of operations outside Massachusetts other than their home offices and hotel rooms, and the board could properly refuse to treat these as bases of operations within the meaning of G. L. c. 63, § 38(*e*). See *Wisconsin Dept. of Rev.* v. *William Wrigley, Jr. Co.*, 505 U.S. 214, 233 n.7 (1992) (*Wrigley*). The board did not err in concluding that the greater part of the sales force payroll was "compensation . . . paid in the commonwealth."

*Sales factor.* The board rejected Chesterton's contentions that its out-of-State sales should not be included in the apportionment formula (a) because its method of doing business makes Chesterton subject to the imposition of a net income tax by other States and (b) because the home offices of its out-of-State salesmen and the hotel and motel rooms from which they sometimes conduct business (the latter are paid for by Chesterton) constitute "premises . . . rented by the corporation outside this commonwealth." G. L. c. 63, § 38(*f*)(2). For the reasons alluded to above, the

---

"3. some of the service is performed in this commonwealth and (i) the base of operations or, if there is no base of operations, the place from which the service is directed or controlled is in this commonwealth, or (ii) the base of operations or the place from which the service is directed or controlled is not in any state in which some part of the service is performed, but the employee's residence is in this commonwealth."

board could properly decline to treat home offices and rented hotel rooms as out-of-State Chesterton premises. Its contention based on its possible exposure to other States' net income taxation is based on G. L. c. 63, § 38(*b*) & (*f*),[2] which allow a domestic business corporation to exclude from its total sales for corporate excise purposes its sales in States that either impose a net income tax on the corporation or have the constitutional power to do so.

"Section 101(a) of Public Law 86-272, 73 Stat. 555 (1959), 15 U.S.C. § 381, prohibits a State from taxing the income of a corporation whose only business activities within the State consist of 'solicitation of orders' for tangible goods, provided that the orders are sent outside the State for approval and the goods are delivered from out-of-state." *Wrigley*, 505 U.S. Ct. at 216. This statute, enacted in 1959, was the subject of divergent opinions on the scope of the activities comprehended in the phrase, "solicitation of orders," questions which now have been largely put to rest by the *Wrigley* decision. The phrase is now understood to include "those activities that are *entirely ancillary* to requests for purchases — those that serve no independent business function apart from their connection to the soliciting of orders — and [to exclude] those activities that the company would have reason to engage in anyway but chooses to allocate to its in-state sales force" (emphasis original). *Id.* at 228-229. The activities on which Chesterton relies — suggested only vaguely by the evidence it presented — relate to its sales people handling consumer complaints and providing consumer and distributor training in the field. At this level of generality, however, these activities do not sound different from what one would expect of any salesman of technical, industrial products who is the principal contact between the repeat users and his employer. Cf. *id.* at 234-235 (salesman's acting as intermediary between the credit department and the customer is ancillary to solicitation and therefore not a basis for imposition of a net income tax). *Scripto, Inc.* v. *Carson*, 362 U.S. 207 (1960), concerning a State's power to impose a use tax on in-State sales by an out-of-State man-

---

[2]General Laws c. 63, § 38(*b*), as appearing in St. 1966, c. 698, § 58, reads in relevant part:

> "For purposes of this section, a corporation is taxable in another state if (1) in that state such corporation is subject to a net income tax . . ., or (2) that state has jurisdiction to subject such corporation to a net income tax regardless of whether, in fact, the state does or does not."

General Laws c. 63, § 38(*f*), provides in relevant part (as amended through St. 1972, c. 748, § 1):

> "Sales of tangible personal property are in this commonwealth if:
>
> . . .
>
> 2. the corporation is not taxable in the state of the purchaser and the property was not sold by an agent or agencies chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside this commonwealth. . . ."

ufacturing corporation, has no bearing on the present problem. Just as home offices and hotel rooms did not constitute corporate premises for purposes of the payroll factor, they are treated as ancillary to solicitation for purposes of the sales factor. See *Wrigley*, 505 U.S. at 233 n.7 & 234-235. Chesterton does not argue that its salesmen in the field approved orders on behalf of the corporation, as contrasted with what we assume is the more usual practice of having orders approved by the central office.

The decision of the Appellate Tax Board is, therefore, affirmed.

*So ordered.*

*Chester M. Howe* for the taxpayer.

*Pierce O. Cray*, Assistant Attorney General, for the Commissioner of Revenue.