KENNAMETAL, INC. *vs.* COMMISSIONER OF REVENUE.

Suffolk. September 5, 1997. - October 29, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Taxation,* Corporate excise, Excise, Corporation. *Administrative Law,* Substantial evidence.

The Appellate Tax Board applied the correct legal standard and substantial evidence supported its conclusion that a foreign corporation's sales force's activities within the Commonwealth were not entirely ancillary to the solicitation of orders for the corporation's products and exceeded those activities protected by Pub. L. 86-272, codified at 15 U.S.C. § 381 (1994), with the result that the corporation was subject to the Massachusetts excise tax as provided in G. L. c. 63, § 39. [42-47]

APPEAL from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*William E. Halmkin (Donald W. Parker* with him) for the plaintiff.

*Thomas A. Barnico,* Assistant Attorney General, for the defendant.

IRELAND, J. We granted an application from the Commissioner of Revenue (commissioner) for direct appellate review on this appeal by Kennametal, Inc. (Kennametal), from a decision of the Appellate Tax Board (board). The board ruled that Kennametal, a Pennsylvania corporation, conducted activities within the Commonwealth between 1979 and 1989 that exceeded those protected by Pub. L. 86-272, codified at 15 U.S.C. § 381 (1994), thus subjecting Kennametal for those years to the Massachusetts excise on foreign corporations provided in G. L. c. 63, § 39. We affirm the board's decision.

1. *Background.*

Kennametal is a multinational corporation, organized under the laws of Pennsylvania and headquartered in that Commonwealth. Kennametal is engaged in the development,

manufacture, and sale of cutting bits[1] and related products for the machining of metals, alloys, and plastics. The total product line consists of approximately 20,000 types of cutting bits and accessories.

Kennametal has been registered to do business in Massachusetts since 1943. During the ten-year period in question, from 1979 to 1989, Kennametal conducted business in Massachusetts through the use of a direct field sales force. The sales force consisted primarily of tooling systems engineers (TSEs) and service engineers (SEs). TSEs were experienced personnel responsible for maintaining customer accounts. TSEs regularly visited current and prospective customers to solicit orders, conduct presentations, and give technical advice. SEs were less experienced personnel who did not have responsibility for customer accounts and whose primary function was to assist the TSEs. During the period in question, Kennametal held no property in Massachusetts other than its sales catalogs, automobiles that it leased for use by its sales force, and samples of cutting bits which the sales force used in connection with customer visits.

Kennametal paid the Massachusetts corporate excise for the tax years 1943 through 1963. In 1963, the commissioner ruled that Kennametal's activities in the Commonwealth at that time did not subject it to the corporate excise. Accordingly, Kennametal ceased filing corporate excise returns in Massachusetts.

In March, 1984, the commissioner issued a letter ruling holding that the use of company cars within the Commonwealth by employees of a foreign corporation constituted a level of business activity sufficient to subject the corporation to the Massachusetts excise.[2] Consequently, Kennametal resumed filing Massachusetts corporate excise returns for the 1985 tax year and timely filed corporate excise returns thereafter for each tax year over the remainder of the period in question. In 1987, the

---

[1]Cutting bits are small pieces of tungsten carbide. The bit is inserted into a tool holder which is then inserted into a larger machine tool. In most machining operations, the piece to be cut or shaped is rotated at different angles and at high speeds against the stationary cutting bit. The life of the cutting bit depends on such factors as the type of material and speed of rotation of the piece being machined, the angle of the cut, the shape of the cutting bit, and the age and condition of the machine tool itself. The cutting bit's life typically ranges from a few minutes to no more than a day.

[2]See LR 84-1, revoked by LR 88-7, 3 Mass Tax Guide at 567, 615 (West 1997).

commissioner commenced an audit of Kennametal that resulted in the assessment of additional taxes and penalties for the tax years 1976 through 1984. Kennametal timely filed requests for abatement for all relevant tax years. The commissioner abated penalties for the tax years 1976 through 1985, but denied the remainder of the abatement requests. Kennametal appealed to the board, which affirmed the commissioner's determination.

2. *Discussion.*

General Laws c. 63, § 39, imposes an excise on "every foreign corporation . . . actually doing business in the commonwealth . . . in a corporate form." The Commonwealth's broad taxing authority over foreign corporations, however, is limited by the Federal government's plenary power to regulate interstate commerce pursuant to the commerce clause of the United States Constitution. Acting under its constitutional powers, Congress in 1959 enacted Pub. L. 86-272, which expressly restricts the authority of a State to impose an income tax on foreign corporations whose business within the State consists solely of "the solicitation of orders . . . for sales of tangible personal property, which orders are [then] sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State."

Public Law 86-272 does not define "solicitation of orders." A number of State courts have attempted to define this term more precisely.[3] However, there was no Federal case law dealing directly with this definition prior to 1992.[4] In that year, the United States Supreme Court in *Wisconsin Dep't of Revenue* v. *William Wrigley, Jr., Co.,* 505 U.S. 214 (1992) (*Wrigley*), concluded that solicitation of orders "covers more than what is

---

[3]See, e.g., *Hervey* v. *AMF Beaird, Inc.,* 250 Ark. 147 (1971); *Coors Porcelain Co.* v. *State,* 183 Colo. 325 (1973), cert. denied, 419 U.S. 874 (1974); *Indiana Dep't of Revenue* v. *Kimberly-Clark Corp.,* 275 Ind. 378 (1981); *Indiana Dep't of State Revenue* v. *Continental Steel Corp.,* 399 N.E.2d 754 (Ind. Ct. App. 1980); *Clairol, Inc.* v. *Kingsley,* 109 N.J. Super. 22, aff'd, 57 N.J. 199 (1970), appeal dismissed, 402 U.S. 902 (1971); *Gillette Co.* v. *State Tax Comm'n,* 56 A.D.2d 475 (N.Y. 1977), aff'd, 45 N.Y.2d 846 (1978); *National Tires, Inc.* v. *Lindley,* 68 Ohio App. 2d 71 (1980); *Miles Lab., Inc.* v. *Department of Revenue,* 274 Or. 395 (1976); *Iron Fireman Mfg. Co.* v. *State Tax Comm'r,* 251 Or. 227 (1968).

[4]In *Heublein, Inc.* v. *South Carolina Tax Comm'n,* 409 U.S. 275, 278-282 (1972), the United States Supreme Court reviewed the history of Pub. L. 86-272. However, the Court stated that it did not need to decide "whether . . . the actions of Heublein's representative . . . [fell] within the term 'solicitation' " and thus did not define the term. *Id.* at 278.

strictly *essential* to making requests for purchases" (emphasis in original). *Id.* at 228. As such, some activities within the State involve something more than a direct request for purchase but, nevertheless, are still protected from State taxation under Pub. L. 86-272.[5] However, *Wrigley* drew a "clear line . . . between those activities that are *entirely ancillary* to requests for purchases — those that serve no independent business function apart from their connection to the soliciting of orders — and those activities that the company would have reason to engage in anyway but chooses to allocate to its in-state sales force" (emphasis in original). *Id.* at 228-229. Hence, the solicitation of orders may include the provision of an automobile and a stock of free samples to a salesman, as these activities serve no purpose other than "to facilitate requests for purchases." *Id.* at 229. By contrast, the Court stated that:

> "employing salesmen to repair or service the company's products is not part of the 'solicitation of orders,' since there is good reason to get that done whether or not the company has a sales force. Repair and servicing may help to *increase* purchases; but it is not ancillary to *requesting purchases*, and cannot be converted into 'solicitation' by merely being assigned to salesmen" (emphasis in original). *Id.*

The *Wrigley* Court expressly rejected as overly broad the taxpayer's argument that "solicitation of orders" included any activities "routinely-associated-with" or "customarily-performed-by salesmen." *Id.* at 227.

Kennametal does not dispute that it "actually [does] business in the commonwealth" as set out in G. L. c. 63, § 39. Kennametal also does not dispute the dollar amount that is due if any amount is due at all. Rather, Kennametal claims that its activi-

---

[5]*Wisconsin Dep't of Revenue* v. *William Wrigley, Jr., Co.*, 505 U.S. 214, 231-232 (1992), also held that Pub. L. 86-272 could protect an activity from State taxation if the activity qualified under a de minimis exception. To qualify for a de minimis exception, a court must consider the activities of the taxpayer within the State as a whole. *Id.* In *Wrigley*, the taxpayer's sales force made direct sales to customers amounting to 0.00007% of the taxpayer's total sales within the State. The Court stated that this activity exceeded the permissible scope of solicitation of orders and also did not qualify for the de minimis exception because of the sales force's other activities within the State. *Id.* at 235. Kennametal does not argue here that its activities qualify under the de minimis exception.

ties within the Commonwealth during the tax years in question consisted solely of the solicitation of orders as described in Pub. L. 86-272, and that it is therefore not subject to the Massachusetts corporate excise at all.

A decision of the board will not be reversed or modified if it is based on a correct application of the law and if it is based on substantial evidence. See *Koch* v. *Commissioner of Revenue*, 416 Mass. 540, 555 (1993); *Commissioner of Revenue* v. *Wells Yachts South, Inc.*, 406 Mass. 661, 663 (1990); *Tenneco Inc.* v. *Commissioner of Revenue*, 401 Mass. 380, 383 (1987). The board's decision is final as to findings of fact.[6] G. L. c. 58A, § 13. But the court may consider whether the evidence in the case is sufficient to support the board's conclusion of law. *Assessors of Weymouth* v. *Curtis*, 375 Mass. 493, 499 (1978); *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 92 (1968). Our review of the sufficiency of evidence, however, is limited to "whether a contrary conclusion is not merely a possible but a necessary inference from the findings." *Commissioner of Revenue* v. *Houghton Mifflin Co.*, 423 Mass. 42, 43 (1996), quoting *First Data Corp.* v. *State Tax Comm'n*, 371 Mass. 444, 446 (1976).

We conclude first that the Board applied the correct legal standard. The board stated that:

> "the activities of Kennametal employees served an independent business function and were not entirely ancillary to the solicitation of orders. Although such [activities] may help to increase purchases, they are not ancillary to requesting purchases since there is an independent business reason to provide advice on the proper use of its product regardless of whether Kennametal had a sales force. The fact that such activities were assigned to the sales force does not convert the activities into those entirely ancillary to solicitation."

The board's exposition of the legal standard it used in reaching its decision comes directly from *Wrigley, supra* at 228-229, almost to the extent of direct quotation.

---

[6]"The credibility of witnesses, the weight of the evidence, and inferences to be drawn from the evidence are matters for the board." *Cummington School of the Arts, Inc.* v. *Assessors of Cummington*, 373 Mass. 597, 605 (1977).

Kennametal's argument here focuses on what it refers to as the board's "reliance" on *Clairol, Inc.* v. *Kingsley*, 109 N.J. Super. 22, aff'd, 57 N.J. 199 (1970), appeal dismissed, 402 U.S. 902 (1971), decided twenty-one years before the *Wrigley* case. In *Clairol*, the court held that the taxpayer's activities within the State exceeded those protected by Pub. L. 86-272, thus subjecting the taxpayer to the state's corporate income tax. *Id.* at 30. The *Wrigley* Court, *supra* at 224-226, expressly rejected the analysis used in *Clairol*. However, the Court concluded that the *result* in *Clairol* would remain unchanged even under the *Wrigley* analysis. *Id.* at 224 n.2. Here, the board used the *Clairol* result as one of a series of cases it analyzed to determine the permissible scope of "solicitation of orders." Nowhere does the board's reference to *Clairol* implicate a standard of legal review. Accordingly, the board's use of *Clairol* is appropriate, and Kennametal's argument that the Board relied on *Clairol* as an incorrect legal standard is without merit.[7]

The board's decision is also supported by substantial evidence. According to the board, a number of Kennametal's activities within the Commonwealth exceeded the permissible scope of the solicitation of orders under Pub. L. 86-272. Those activities included (1) using samples for testing the performance of Kennametal's products and preparing reports based on the test results, (2) preparing inventory analyses as part of a broader

---

[7]Kennametal also argues that the legal standard for determining the scope of permissible activities was determined by the Appeals Court in *A.W. Chesterton Co.* v. *Commissioner of Revenue*, 37 Mass. App. Ct. 936 (1994). In *Chesterton*, the board determined that the out-of-State activities of the sales force of a domestic corporation (Chesterton) were entirely ancillary to the solicitation of orders and thus fell under the protection of Pub. L. 86-272 in the foreign States. The Appeals Court affirmed the Board. The Appeals Court stated that the out-of-State activities of the sales force included "handling consumer complaints and providing consumer and distributor training in the field." *Id.* at 938. Kennametal cites this language as standing for the proposition that the Appeals Court determined that such activities were within the permissible scope of solicitation of orders. However, the case is inapposite. The issue in this part of the Appeals Court's decision did not concern the standard for solicitation of orders, but rather the burden of proof. The Appeals Court simply held that Chesterton had not met its burden of proving that the activities of the sales force did in fact exceed the permissible scope of solicitation of orders because Chesterton's proof was "suggested only vaguely by the evidence it presented." *Id.* As such, the Appeals Court did not rule on the merits of the permissible scope of solicitation of orders and Kennametal's reading of *Chesterton* is incorrect.

tool standardization program,[8] and (3) making frequent in-plant presentations (up to six hours in length and involving as many as 200 employees of current and prospective customers) on the use of Kennametal's products.

There exists no bright line to distinguish those activities that are entirely ancillary to the solicitation of orders from those that also serve an independent business function. See *Wrigley, supra* at 228-29. Activities such as those cited by the board occur along a continuum. *Wrigley* guides our analysis merely with examples at each end of that continuum. In the end, business activities conducted within a State must be considered on an individual basis.

The activities here in question were designed not only to solicit orders, but to ingratiate customers and to assist buyers in knowing what to order. Those activities fall outside of the protection afforded by Pub. L. 86-272. Under *Wrigley*, the activities must facilitate the actual solicitation of orders; they may not merely serve to increase general sales. *Id.* at 233.

Kennametal had reasons independent of soliciting orders that motivated it to provide the activities in question, even if no sales force operated in the Commonwealth. For example, the proper use of Kennametal's products improves performance and enhances the company's reputation among buyers. This can be especially important for companies such as Kennametal that attempt to promote their products as being of higher quality than those of competitors. Similarly, such activities on the part of Kennametal's sales force could relieve Kennametal from having to produce lengthy and detailed product manuals for customers. In short, the activities in question cannot be viewed as entirely ancillary to requests for purchase, but rather as serving an independent business function as well.[9] As such, Kennametal is not protected under Pub. L. 86-272.

---

[8]The tool standardization program involved surveying every machine at a customer's plant and preparing an analysis of how Kennametal's products could be used exclusively for each machine. The surveys lasted from a few hours to several days.

[9]The board also determined that Kennametal exceeded the permissible scope of the solicitation of orders under Pub. L. 86-272 with respect to resolving customer complaints. *Wrigley, supra* at 234-235, held that the resolution of customer complaints was entirely ancillary to the solicitation of orders and thus protected by Pub. L. 86-272. The case at hand is distinguishable. In *Wrigley*, the customer complaints in question involved credit disputes with the

Kennametal's own interpretation of its activities as merely part of an order solicitation process stretches Pub. L. 86-272 too far. Indeed, it is difficult to imagine where Kennametal's interpretation draws the line on impermissible activities. The *Wrigley* Court, *supra* at 226, explicitly noted that broad, open-ended interpretations of Pub. L. 86-272 would reduce that law to a nullity.

The board reasonably could conclude as it did that presentations in front of 200 employees were primarily intended, generally, to increase sales rather than directly to facilitate the solicitation of orders. Similarly, the board could reasonably conclude that lengthy surveys of all the machines in a particular customer's plant were intended primarily to increase over-all sales rather than merely to solicit orders. The board might have reached contrary conclusions, but such conclusions are not necessarily inferred from the facts. See *Commissioner of Revenue* v. *Houghton Mifflin Co.*, 423 Mass. 42, 43 (1996).

Finally, Kennametal warns of the potential chilling effect of the board's conclusion on companies like Kennametal whose products (or the applications of those products) are technically oriented. Kennametal maintains that the board's decision would prevent any foreign company with an in-State sales force from communicating to customers even the slightest technical information through its sales force, lest the Massachusetts corporate excise apply. Nothing in this opinion creates such a Draconian standard. Consistent with *Wrigley*, *supra* at 229, the

---

main office. The activities of the in-State sales force primarily involved acting as an intermediary between customers and the main office; the actual resolution of the problem did not come from the sales force itself. (Such disputes arose only two to three times a year within the entire State. *Id.* at 217). As such, the Court concluded that the mediation activities were entirely ancillary to the solicitation of orders because it was unlikely "that this mediating function . . . would have been performed by some other employee . . . if the on-location sales staff did not exist." *Id.* at 235. By contrast, Kennametal's customer disputes primarily involved problems with the use of the product itself. Kennametal's sales force typically called or visited the customer to resolve the problems directly. Also, these disputes arose far more frequently than the credit disputes in *Wrigley*. One Kennametal salesperson testified to having encountered approximately eighteen such incidents within the previous year among his customers alone. It thus appears highly likely that *some* employee would have performed the dispute resolution function in the absence of an in-State sales force. As such, the activity cannot be considered as entirely ancillary to the solicitation of orders; it simply represents the transfer of an impermissible activity to the sales force. As noted in *Wrigley*, such a transfer does not make the impermissible activity permissible. *Id.* at 229.

standard merely prevents tax-generating activities from ceasing to be tax-generating simply because they are performed by an in-State sales force.

The board's decision is affirmed.

*So ordered.*