## Amgen Inc. *vs.* Commissioner of Revenue.

Suffolk. February 6, 1998. - April 23, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Taxation,* Corporate excise. *Administrative Law,* Judicial review. *Words,* "Solicitation of orders."

The Appellate Tax Board correctly concluded that the activities of a foreign corporation's sales force in Massachusetts exceeded the solicitation of orders protected from taxation under Pub. L. 86-272 and that the corporation was thus subject to excise taxation as provided in G. L. c. 63, § 39. [360-362]

Appeal from a decision of the Appellate Tax Board.

The Supreme Judicial Court granted an application for direct appellate review.

*Jonathan M. Zorn (Steven A. Kaufman* with him) for the taxpayer.

*Thomas A. Barnico,* Assistant Attorney General, for Commissioner of Revenue.

Ireland, J. This is an appeal from a decision of the Appellate Tax Board (board), denying the applications of Amgen Inc. (Amgen), for abatement of the Massachusetts excise on foreign corporations doing business in Massachusetts. Amgen argues that its activities in the Commonwealth during the years in question[1] do not subject it to the excise, as provided in G. L. c. 63, § 39. Amgen relies on a Federal statute, Pub. L. 86-272, codified at 15 U.S.C. § 381 (1994), that prohibits a State from imposing an excise on foreign corporations whose only business activities involve the solicitation of certain orders. We conclude that the activities of Amgen in the Commonwealth exceeded those protected under Pub. L. 86-272 during the years in question and that, therefore, Amgen was subject to payment of the excise on foreign corporations for those years. We need not

---

[1]This case involves Amgen's tax years ending March 31, 1990; March 31, 1991; and December 31, 1991.

reach the question, also argued by Amgen, whether Amgen's dealings with independent contractors in Massachusetts perform-ing research for Amgen would also constitute "doing business" in the Commonwealth for purposes of G. L. c. 63, § 39.

The following facts were set forth in the parties' statement of agreed facts. Amgen, a Delaware corporation with its principal place of business in Thousand Oaks, California, develops, manufactures, and markets pharmaceutical products. During the years in question, Amgen sold two products in the United States, both of which were available to patients by prescription only.[2] Amgen manufactured these products exclusively in California and sold them to wholesale distributors, physicians, hospitals, and other health care institutions. All orders for Amgen's products were placed with Amgen's offices in California for ap-proval or rejection. Accepted orders were shipped via common carrier from outside Massachusetts directly to the purchaser. Amgen did not maintain any manufacturing facilities, research facilities, offices, warehouses, or other places of business in Massachusetts.

Amgen solicited sales of its products in Massachusetts through a sales force that consisted primarily of professional sales representatives (PSRs) and clinical support specialists (CSSs). Amgen also employed district managers who supervised the PSRs, and a corporate accounts manager who was respon-sible for certain larger accounts within Massachusetts.

Amgen employed seven PSRs in Massachusetts at various times. The primary responsibility of the PSRs was to call on doctors and nurses to encourage them to prescribe Amgen's products. When making calls, the PSRs would describe the product and provide a copy of the package insert approved by the Food and Drug Administration (FDA). The PSRs were not medical professionals, nor did they carry or distribute samples of Amgen's products.

Amgen also employed two CSSs in Massachusetts at various times. The primary responsibilities of the CSSs included ac-companying PSRs on calls and giving programs on Amgen's products to groups of nurses at hospitals and other health care facilities in Massachusetts. These programs were given on a

---

[2]One product promotes the manufacture of red blood cells and is used in the treatment of dialysis patients with anemia. The other product stimulates the production of white blood cells and is used to treat certain patients undergoing chemotherapy.

frequent basis and were sometimes attended by patients, as well as nurses. In addition, the CSSs were sometimes asked to review patient charts or answer questions about the use or proper dosage of Amgen's products for specific patients.[3] The CSSs were nurses.

The Commissioner of Revenue (commissioner) assessed, and Amgen paid, the excise for the years in question. Amgen filed timely applications for abatement in the aggregate amount of $356,036. The commissioner denied the applications and Amgen appealed to the board.

General Laws c. 63, § 39, imposes an excise on "every foreign corporation . . . actually doing business in the commonwealth . . . in a corporate form." However, the Commonwealth's broad taxing authority over foreign corporations is limited by the Federal government's plenary power to regulate interstate commerce pursuant to the commerce clause of the United States Constitution. See *Kennametal, Inc.* v. *Commissioner of Revenue*, 426 Mass. 39, 41 (1997), cert. denied, 118 S. Ct. 1386 (1998); *Heublein, Inc.* v. *South Carolina Tax Comm'n*, 409 U.S. 275, 279-281 (1972). Congress in 1959 enacted Pub. L. 86-272, which restricts the authority of a State to impose an income tax on foreign corporations whose business within the State consists solely of "the solicitation of orders . . . for sales of tangible personal property, which orders are [then] sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State."

Public Law 86-272 does not define "solicitation of orders." Although a number of State courts attempted to define the term more precisely,[4] there was no Federal case law dealing directly with this issue until *Wisconsin Dep't of Revenue* v. *William Wrigley, Jr., Co.*, 505 U.S. 214 (1992) (*Wrigley*). In that case, the United States Supreme Court concluded that solicitation of orders "covers more than what is strictly *essential* to making

---

[3]The statement of agreed facts indicates that the CSSs also sometimes provided information or clinical support to patients, but there is no indication as to the exact nature of this activity. The statement of agreed facts also indicates that Amgen provided educational grants to nurses (who were not Amgen employees) to attend speaking engagements and lectures related to Amgen's products.

[4]See cases cited in *Kennametal, Inc.* v. *Commissioner of Revenue*, 426 Mass. 39, 41 n.3 (1997), cert. denied, 118 S. Ct. 1386 (1998).

requests for purchases" (emphasis in original). *Id.* at 228. As such, some activities within the State may involve more than a direct request for purchases, but still be protected by Pub. L. 86-272. *Wrigley* also held that certain activities could qualify for the protection of Pub. L. 86-272 on a de minimis basis. *Id.* at 231-232. However, *Wrigley* drew a "clear line . . . between those activities that are *entirely ancillary* to requests for purchases — those that serve no independent business function apart from their connection to the soliciting of orders — and those activities that the company would have reason to engage in anyway but chooses to allocate to its in-state sales force" (emphasis in original). *Id.* at 228-229.

The board ruled that the activities of Amgen's PSRs and district managers either did not exceed soliciation of orders or qualified as a de minimis exception. However, the board also ruled that various activities of the CSSs exceeded solictation of orders. The board further ruled that these activities, taken both individually and as a whole, were not de minimis, and that Pub. L. 86-272 thus did not protect Amgen from the Massachusetts excise on foreign corporations. We granted Amgen's application for direct appellate review.

We first addressed the issue of defining solicitation of orders in *Kennametal*. That factually similar case involved a foreign corporation engaged in the business of developing, manufacturing, and selling cutting bits for the machining of metals, alloys, and plastics. *Id.* at 39-40. We held that the corporation was subject to the Massachusetts excise because the activities of its in-State sales force exceeded the solicitation of orders in:

> "(1) using samples for testing the performance of [its] products and preparing reports based on the test result, (2) preparing inventory analyses as part of a broader tool standardization program, and (3) making frequent in-plant presentations (up to six hours in length and involving as many as 200 employees of current and prospective customers) on the use of [its] products" (footnote omitted).

*Id.* at 44-45. We concluded that these activities went beyond solicitation, and held that they fell outside of the protection afforded by Pub. L. 86-272 because, under *Wrigley*, protected activities must facilitate the actual solicitation of orders, rather than merely serve to increase general sales. See *id.* at 45.

In *Kennametal* we also noted that *Wrigley* created no bright line to distinguish those activities that are entirely ancillary to solicitation of orders from those that also serve an independent business function, and thus are not protected under Pub. L. 86-272. *Id.* We concluded instead that the activitites in cases such as *Kennametal* occur along a continuum, and that *Wrigley* guides our analysis merely with examples at each end. *Id.* In the end, the cases must be considered on an individual basis. See *id.*

We will not reverse or modify a decision of the board if it is based on a correct application of the law and on substantial evidence. See *Kennametal, supra* at 43, citing *Koch* v. *Commissioner of Revenue*, 416 Mass. 540, 555 (1993); *Commissioner of Revenue* v. *Wells Yachts South, Inc.*, 406 Mass 661, 663 (1990); *Tenneco Inc.* v. *Commissioner of Revenue*, 401 Mass. 380, 383 (1987). We may consider whether the evidence in the case is sufficient to support the board's conclusion of law. See *Kennametal, supra*, citing *Assessors of Weymouth* v. *Curtis*, 375 Mass. 493, 499 (1978); *Boston Edison Co.* v. *Selectmen of Concord*, 355 Mass. 79, 92 (1968). However, our review of the sufficiency of the evidence "is limited to 'whether a contrary conclusion is not merely a possible but a necessary inference from the findings.' " *Kennametal, supra*, quoting *Commissioner of Revenue* v. *Houghton Mifflin Co.*, 423 Mass. 42, 43 (1996), quoting *First Data Corp.* v. *State Tax Comm'n*, 371 Mass. 444, 446 (1976).

The board was correct in ruling that the activities of Amgen's CSSs exceeded solicitation of orders.[5] The board correctly concluded that the activities of the CSSs in reviewing patient

---

[5]We do not reach our conclusion because the CSSs dealt primarily with nurses, who would not be making the actual purchase decision. We agree with Amgen that nurses can have significant input into the purchasing decision, and believe that the mere solicitation of nurses here, without more, would have been an indirect form of solicitation of orders that is not prohibited by either *Wisconsin Dep't of Revenue* v. *William Wrigley, Jr., Co.*, 505 U.S. 214 (1992), or by *Kennametal*. Further, conducting product programs for prospective purchasers (or those who can have significant input into the purchasing decision) should not be considered to exceed solicitation of orders as a per se rule. The record indicates that the product programs were conducted "frequently" in Massachusetts, but does not define that term more precisely. There is also no indication in the record whether these product programs were as extensive as those in *Kennametal*, either with respect to duration or to the number of people involved. We thus cannot say whether the board's ruling that Amgen's product programs exceeded the solicitation of orders was based on substantial evidence.

charts and answering questions about the use and dosage of Amgen's products for specific patients exceeded the solicitation of orders, thus removing any protection from the Massachusetts excise that Pub. L. 86-272 might offer. The board concluded that these activities clearly had an independent business function. Although the board did not explain what this function might be, one such possibility is to reduce the number of calls to Amgen's Professional Services Group or to its "hotline," each of which was staffed with physicians and other health care professionals. As Amgen concedes, transferring the performance of such activities to the sales force does not allow an activity that would be unprotected under Pub. L. 86-272 to become protected. See *Wrigley, supra* at 229; *Kennametal, supra* at 46-47.

Amgen argues that affirming the board's ruling would undermine the effectiveness of its general sales solicitation effort. Amgen is misreading the proper standard for determining whether an activity is protected from the Massachusetts excise by Pub. L. 86-272. Amgen has indicated how the activities of its CSSs might tend to increase general sales. Amgen's brief even states that the activities of its sales force were exclusively dedicated to the goal of increasing orders. Amgen has not indicated how such activities increase the actual *solicitation* of orders. Pub. L. 86-272 protects only the latter from the Massachusetts excise. See *Wrigley, supra* at 233; *Kennametal, supra* at 45. Indeed, as we noted in *Kennametal, supra* at 46, Amgen's interpretation of its own activities stretches Pub. L. 86-272 too far, and it is difficult to imagine where Amgen's interpretation would draw a line on unprotected activities.[6]

Accordingly, the board did not err in concluding that the activities of Amgen's sales force in Massachusetts exceeded solicitation of orders, thus subjecting Amgen to the Massachusetts corporate excise. We affirm the board's decision that Amgen is subject to the Massachusetts corporate excise for the periods in question.

*So ordered.*

---

[6]We note also that Amgen has not argued that the activities of its CSSs constitute a de minimis exception to Pub. L. 86-272.