IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Corporate Excise Tax

CHENG SHIN RUBBER USA, INC.,　　　　　)
a Georgia corporation,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　　)　TC-MD 150268D
　　　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
DEPARTMENT OF REVENUE,　　　　　　　)
State of Oregon,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)　**ORDER ON CROSS MOTIONS FOR**
　　　　　　　　Defendant.　　　　　　　)　**PARTIAL SUMMARY JUDGMENT**

Plaintiff appeals Defendant's Notice of Assessment dated January 20, 2015, for the 2006

through 2013 tax years. The parties submitted cross motions for partial summary judgment and

declarations in support of their motions. Oral argument was held in the Oregon Tax Court on

May 9, 2016, in Salem, Oregon. Stephanie E.L. McCleery appeared on behalf of Plaintiff.

James C. Strong and Darren Weirnick appeared on behalf of Defendant.

## I. STATEMENT OF FACTS[1]

Plaintiff is a Georgia-based wholesale tire distributor that sells tires to Les Schwab Tire

Centers (Les Schwab) in Oregon. Les Schwab places orders for tires with Plaintiff's personnel

in Georgia or Asia. Plaintiff ships the tires from outside Oregon to fulfill Les Schwab's orders.

Plaintiff has no warehouses, property, or employees in Oregon. Plaintiff does not have

employees or agents that regularly visit Oregon. Plaintiff does not have a contract with Les

Schwab for any services.

---

[1] In their respective motions, the parties do not dispute the essential facts of the case. The court's
Statement of Facts is derived from the parties' motions, unless otherwise noted. (*See* Def's Mot Summ J at 2–3;
Ptf's Mot Summ J at 1–4.)

Plaintiff offers the "Maxxis Limited Warranty" (Maxxis Warranty) to purchasers of its tires, which covers the tires for up to six years or 30/32nds of the tires' tread wear. For tires that are determined "unserviceable by an authorized dealer/distributor" during the first 50 percent of tread wear, the Maxxis Warranty states that the tire will be replaced with the same or comparable new Maxxis radial passenger/light truck tire at no charge. The Maxxis Warranty further explains that Plaintiff is not responsible for any labor costs incurred in mounting and balancing the tire. For tires that are unserviceable after the first 50 percent of tread wear, the Maxxis Warranty provides for a pro-rated credit towards the purchase of a comparable new Maxxis tire based on the percentage of the usable tread remaining.

The limited warranty applies only if the customer returning the tires is the original purchaser and the tire was originally installed on the vehicle by the dealer/distributor at the time of purchase. (Ptf's Mot Summ J, Ex C at 2.) Within the warranty, Plaintiff directs purchasers to get their tires inspected by an "authorized dealer/distributor." Les Schwab is Plaintiff's only authorized dealer/distributor in Oregon. On two occasions during the tax years at issue, Plaintiff directed Oregon customers to Les Schwab to get their tires inspected, after the customers contacted Plaintiff directly.

Les Schwab offers a warranty to its customers, called the "Les Schwab Best Tire Value Promise" as part of "Les Schwab's World Class Customer Service." Les Schwab's warranty includes free flat repairs, free re-balancing, free tire checks, free tire rotations, free air checks, and free brake and visual alignment checks for the lifetime of the tires purchased, as well as free snow tire installation. If the tire is defective due to a manufacturing design or material defect, Les Schwab will replace it free of charge during the first 25 percent of tread wear. After 25

percent of tread wear Les Schwab will provide a pro-rata adjustment based on the original sale price.

If Les Schwab determines one of Plaintiff's tires is defective, it replaces the tire, issues a refund, or provides a discount toward a purchase of a new tire. If Les Schwab determines that a Maxxis tire is unserviceable due to a manufacturer's defect, it completes and submits a claim form to Maxxis. The tire, or the affected part, is sent to the Maxxis Technology Center in Georgia. Each tire is evaluated separately by the Maxxis Technology Center, where the claim is either granted or denied. If granted, Maxxis might send a replacement tire, but often just provides Les Schwab with a monetary credit. From 2007 to 2013, Les Schwab submitted claims for 2,530 tires, of which Plaintiff provided monetary credit for 2,350 tires and denied claims for 180 tires. After 2008, Plaintiff began to just credit any "out of round" tire defects from Les Schwab, against company policy, without an assessment or denial of defect claim. (Ptf's Mot Summ J, Ex E at 1).

Plaintiff did not file Oregon Corporate excise tax returns for 2006 through 2013. Defendant requested that Plaintiff file tax returns based on its activities in Oregon. When it refused to do so, Defendant issued a Notice of Assessment to Plaintiff for those years on January 20, 2015.

## II. ANALYSIS

The issue in this case is whether Plaintiff is immune from taxation in Oregon under Public Law (PL) 86-272.[2]

/ / /

/ / /

---

[2] Codified as 15 USC §§ 381 to 384, but referred to in this decision as PL 86-272.

A.      *General Rules for Corporate Excise Tax*

Oregon imposes on every corporation "doing business within this state an excise tax for the privilege of carrying on or doing that business measured by its federal taxable income" as adjusted by other tax provisions.  ORS 317.018(3).[3]  The Oregon courts have "extended the reach of the excise tax to the limit defined by the federal constitution." *Ann Sacks Tile and Stone, Inc. v. Dept. of Rev.* (*Ann Sacks*), 20 OTR 377, 381 (2011).

In order to impose taxes on a corporation, the state must first determine whether there is "a substantial nexus between the state and the activity or income it seeks to tax."  OAR 150-317-0020.[4]  A substantial nexus "for corporate excise and income tax jurisdiction purposes * * * does not require a taxpayer to have a physical presence in Oregon."  OAR 150-317-0020(2). "Substantial nexus exists where a taxpayer regularly takes advantage of Oregon's economy to produce income for the taxpayer* * *."  *Id.*  To determine if there is a substantial nexus, the court can consider, among other things, whether the taxpayer, "maintains continuous and systematic contacts with Oregon's economy or market" or "[c]onducts deliberate marketing to or solicitation of Oregon customers[.]"  OAR 150-317-0020(3).  The parties do not dispute that Oregon has a substantial nexus with Plaintiff through continuous and systematic contacts to Les Schwab for the purpose of selling their Maxxis Brand Tires.  Having found a nexus between Plaintiff's activities and Oregon, the court must then consider any limitations imposed by PL 86-272.

/ / /

/ / /

---

[3] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to the 2005 version.  Additionally, unless otherwise noted, the 2005 statutes were not amended through 2013.

[4] Unless otherwise noted, the court's references to the Oregon Administrative Rules (OAR) are to the 2016 version, which were renumbered effective September 2, 2016.

B.    *PL 86-272*

PL 86-272, generally, "Prohibits state and local governments from imposing net income taxes on foreign sellers of tangible personal property where the activities fall within the prohibitions of the statute."  Paul J. Hartman & Charles A. Trost, *Federal Limitations on State and Local Tax* § 10:9 (2d ed 2003).  Under PL 86-272, a state cannot impose a net income-based tax on corporations doing business in the state if their in-state activities are limited to:

> "(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and

> (2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1)."

15 USC § 381(a).

While the measure is written as a limitation to the state's ability to tax, the courts have historically construed the statue strictly, leaving states with broad authority to tax foreign corporations.  Almost any non *de minimis* activity is seen as defeating the protections of PL 86-272.  *See, e.g. Chester A. Asher, Inc. v. Dir., Div. of Taxation*, 22 NJ Tax 582, 595–99 (2006) (collecting payments and accepting returns); *Kennemetal, Inc. v. Comm'r of Rev.*, 426 Mass 39, 45, 686 NE2d 436 (1997), *cert. den.*, 523 US 1059, 118 S Ct 1386 (1998) (testing samples, preparing inventory analyses, in-plant presentations, and resolving customer complaints); *Alcoa Bldg. Products, Inc. v. Comm'r of Rev.,* 440 Mass 224, 229–231, 797 NE2d 357 (2003) (warranty claims); *Estee Lauder Servs., Inc. v. Dept. of Rev.*, TC-MD 982900D, WL 33225378 at *6–7 (Or Tax M Div, Oct 30, 2000) (setting up stock plan and back-order policy for retailers,

preparing summary sales reports, preparing monthly itineraries); *Ann Sacks*, 20 OTR 382–89 (warranty work).

C.      *Case law*

Guidance on PL 86-272 from the United States Supreme Court is limited.  In *Wisconsin Dep't of Rev. v. William Wrigley, Jr., Co. (Wrigley)* 505 US 214, 112 S Ct 2447, 120 L Ed 2d 174 (1992), the court held that replacing stale gum by employees of the company was an ancillary action not required for solicitation and therefore outside the immunity of PL 86-272. Wrigley chewing gum was based in Chicago, IL and did not own or lease real property in Wisconsin.  *Id.* at 216.  Wrigley also did not operate any manufacturing training or warehouse facility within Wisconsin.  *Id*. at 216–17.  Wrigley sold its products in several states, including Wisconsin, through a sales force consisting of a regional manager and various field representatives.  *Id*. at 217.  The sales representatives lived in Wisconsin and were provided company cars, but not offices.  In addition, they were furnished with a stock of gum "with an average wholesale value of about $1,000."  *Id.* at 217–18.  That stock of gum was used, in part, to replace any part of a retailer's stock that had gone stale; the stale gum was replaced at no cost to the retailer.  *Id.* at 218.

The Court concluded that the act of replacing stale gum with fresh gum by a sales representative was not necessary for solicitation and therefore not protected by PL 86-272.  *Id.* at 233.  The Court reasoned that, "repair and servicing may help to *increase* purchases; but it is not ancillary to *requesting purchases* and cannot be converted into 'solicitation' by merely being assigned to salesmen."  *Id.* at 229 (emphasis in original); *See also, Herff Jones Co. v. Tax Com.*, 247 Or 404, 412, 430 P2d 998 (1967) (discussing taxation immunity for sales representative's collection activities).  The Court further explained, it is "not enough that the activity facilitate

sales, but it must facilitate the requesting of sales, which [Wrigley] did not do" by replacing the stale gum with fresh gum. *Wrigley*, 505 US at 233. The Court found that Wrigley would have replaced the gum regardless of any potential sales benefit, that the act of replacing gum is an "independent business function quite separate from requesting orders[.]" *Id.* at 233. Furthermore, the Court reasoned that Wrigley would have replaced the stale gum regardless of whether the sales team or a separate employee replaced it. *Id.* Therefore, Wrigley was not immune from state taxation under PL 86-272. *Id.* at 235.[5]

State courts have also analyzed PL 86-272. In *Alcoa Bldg. Products, Inc. v. Comm'r of Rev.,* (*Alcoa*) 440 Mass 224, 797 NE2d 357 (2003), the Massachusetts Supreme Judicial Court held that when a foreign corporation relies on sales employees to assist with any warranty claims, they are not immune to state taxation under PL 86-272. Alcoa, a corporation organized under the laws of Ohio, sold building products in Massachusetts, including vinyl siding. *Id.* at 225. Alcoa had no physical presence in Massachusetts. *Id.* Alcoa employed four to five district sales managers, some of whom lived in Massachusetts, all of whom were assigned sales territories within the state. *Id.* Orders made by the sales managers were sent out of the state to Alcoa headquarters and either accepted or rejected. *Id.* at 226. On the occasion that a product was not working, a district sales manager would make a trip to the construction site to investigate the merit of the warranty claim. *Id.* This was called "damage control" and was designed to protect the district sales manager's relationship with their customers and promote Alcoa's reputation. *Id.* District Sales Managers would also assist customers with the filing of the warranty claims nationwide. *Id.*

---

[5] The Court also concluded that Wrigley's use of "agency stock checks" and storage of gum in Wisconsin fell outside of the protection afforded by PL 86-272. *Wrigley*, 505 U.S. at 234.

The court in *Alcoa* reasoned that assisting customers with warranty work, such as filing a claim or visiting construction sites after a sale, went beyond the solicitation of orders. *Id.* at 229. The court found that while those activities may have enhanced the reputation of the company and increased purchases of Alcoa products generally, they were not entirely ancillary to the sales staff job of soliciting purchases. *Id.* The court determined that Alcoa had an independent business purpose to have employees help customers with warranty claims, regardless of the availability of the sales representative to carry out that activity. *Id.* at 229–30. Therefore, the court found that these activities had independent business purposes and were not protected by PL 86-272. *Id.* at 230–31.

The leading Oregon case on PL 86-272 is *Ann Sacks*. Ann Sacks was subject to Oregon corporate excise tax, but the question before the court was whether Kohler, its parent company, was also subject to Oregon corporate excise tax. *Ann Sacks*, 20 OTR at 379. Kohler contracted with Authorized Service Representatives (ASRs) and distributors to perform warranty repair work on plumbing fixtures. *Id.* at 378. The court found that ASRs were independent contractors for Kohler. *Id.* at 382. However, the court found that ASR's for Kohler were not simply soliciting sales and maintaining an office, but doing warranty repair work on behalf of Kohler. *Id.* at 379. The court held that these activities were not protected by PL 86-272. *Id.* at 388.

The *Ann Sacks* case was considered in some length in *Hellerstein & Hellerstein: State Taxation* ¶ 6.26[2][a] (3rd Ed). The authors stated that Judge Breithaupt appeared on the surface to be in opposition to their opinion contained in their 2nd edition, but they actually found substantial agreement. "First, as our earlier summary of the law reveals, we are actually in complete agreement with Judge Breithaupt that Public Law 86-272 itself ceases to protect a taxpayer if the activities of its independent contractors exceed the protected activities enumerated

in the statute." *Id.* Second, they agreed with the results of the *Ann Sacks* case itself. *Id.* Third, they found Oregon law somewhat unique in that state law goes to the limits of the constitution unlike other states. *Id.*; *see also Reader's Digest*, 94 Cal App 4th 1240, 115 Cal Rptr 3d 53 (3d Distr. 2001).

D.      *Independent Contractor*

In addition to the protections above, Congress added protections for sales by independent contractors:

> "For purposes of subsection (a) of this section, a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance, of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or soliciting orders for sales, of tangible personal property."

15 USC § 381(c).

PL 86-272 defines the term "independent contractor" as "a commission agent, broker, or other independent contractor who is engaged in selling, or soliciting orders for the sale of, tangible personal property for more than one principal and who holds himself out as such in the regular course of his business activities; and, "the term 'representative' does not include an independent contractor." 15 USC § 381(d)(1), (2). In this case there is no real question that Les Schwab is an independent contractor: it sells tires for more than one principal, it holds itself as such in its regular course of business, and it is not subject to direction and control by Plaintiff.

Plaintiff argues that it is immune from Oregon Corporate excise tax under PL 86-272 because Les Schwab, an independent contractor, does not act on behalf of Plaintiff in performing warranty work; therefore, Plaintiff's activities do not go beyond "solicitation of orders" in the state. Defendant argues the opposite: Les Schwab acts on behalf of Plaintiff as a representative

and therefore does warranty work through representatives in the state. This court views Defendant's arguments as pushing the boundaries of PL 86-272 one step beyond *Ann Sacks;* because in this case there was no parent-subsidiary or even contractual relationship between the entities. This court is not aware of any case where a state has taken the activities of a separate and distinct corporation and imputed that to an out-of-state corporation for purposes of imposing an excise tax; it appears to be a case of first impression. In reviewing cases across the county, and those in Oregon, the cases which have found activities were beyond the protections of PL 86-272, resulting in a loss of immunity, involved employees or subsidiaries of the out-of-state corporation. As has been discussed earlier, that is certainly not the case here.

Nevertheless, a finding that Les Schwab is an unrelated company and an independent contractor does not end the inquiry. The very definition of the term independent contractor in PL 86-272 is narrowly constructed to protect only sales activities. In this case there are also warranty activities performed by Les Schwab. Plaintiff argues that these activities are undertaken by Les Schwab alone. In Plaintiff's view, Plaintiff "restricts its activities within the State of Oregon to the solicitation of orders to be accepted and filed from Plaintiff's corporate headquarters in Georgia." (Ptf's Mot Sum J at 6.) The court is faced with the issue of whether the activities of an independent contractor, Les Schwab, were made on behalf of Plaintiff, resulting in the loss of protection under PL 86-272; this issue is where the rubber meets the road.

Defendant argues that Les Schwab acts as a representative through their conduct of performing "warranty repair work." The service in question, or "warranty repair work" is that Plaintiff instructs purchasers to go to an authorized dealer or distributor to take advantage of the Maxxis Warranty. Les Schwab may take off the tire and determine whether it is a manufacturer error or an installation error covered by Les Schwab's warranty. However, when there is a

manufacturer defect, and Les Schwab fills out the warranty form and submits it to Plaintiff, and Plaintiff makes a payment or credit for the product, that activity goes beyond solicitation and is not protected by PL 86-272. The purchaser of the tires does not fill out the warranty form, and credit or payment from Plaintiff does not go to the purchaser. Rather, Plaintiff uses an intermediary to process the warranty claim who receives the payment or credit. As in *Alcoa*, processing warranty claims may help to increase sales of Plaintiff's tires but, "it is not ancillary to *requesting purchases*, and cannot be converted into 'solicitation' by merely being assigned" to independent contractors. *Alcoa* 440 Mass at 227 (quoting *Wrigley*, 505 US at 230) (emphasis in original).

It is clear to the court that warranty work performed on defective tires, if performed by Plaintiff in this state, would result in a loss of protection under PL 86-272. The finding that Les Schwab is an independent contractor does not result in automatic protection for Plaintiff. *Ann Sacks*, 20 OTR at 388. Clearly, the work Les Schwab performs on tires which are not under the Maxxis Warranty, *e.g.* road hazards, are not done on behalf of Plaintiff. Yet, despite the lack of direct compensation of tires for which the Maxxis warranty applies, Les Schwab does complete a warranty claim form and transmits the tires back to Plaintiff for payment or credit. Payment for the specific services is not required under *Wrigley* and other cases decided because in those cases employees or independent contractors were not paid additional compensation because of warranty work. Since Plaintiff is transmitting payment or credit for the defective tires to Les Schwab, the court does not agree with Plaintiff's argument that the warranty work is not on behalf of Plaintiff. Applying the principles of *Ann Sacks* and *Alcoa*, this court concludes that the state is not overreaching its authority in subjecting Plaintiff to corporate excise taxation.

/ / /

### III.  CONCLUSION

The court, having decided that Plaintiff engaged in activities that were not solely limited to solicitation and the ancillary activities that facilitate the request for an order, concludes that Plaintiff is subject to excise tax in Oregon for the 2006 through 2013 tax years.  Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment is denied.

IT IS FURTHER ORDERED that Defendant's Motion for Partial Summary Judgment is granted.

IT IS FURTHER ORDERED that, within 30 days of the date of this Order, the parties shall submit a joint written status report proposing next steps.

_____
RICHARD DAVIS
MAGISTRATE

*This interim order may not be appealed.  Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved.  ORS 305.501.*

*This document was filed and entered on March 31, 2017.*